George D. Ogden, J.
On December 21, 1962 the Grand Jury of the County of Monroe indicted defendant for the crime of Sabbath breaking, in violation of sections 2140, 2141 and 2147 of the Penal Law of the State of New York, claiming that the defendant did “ willfully and unlawfully publicly sell and offer for sale certain property, the public sale or offering for sale of which on Sunday is prohibited by law.” (Ten other individuals or corporations were indicted by the same Grand Jury for similar offenses; another Grand Jury did not indict two other individuals or corporations for similar offenses.)
. Defendant seeks an order dismissing the indictment herein upon the ground that the defendant has been' denied equal protection of the law, in violation of the Fourteenth Amendment of the United States 'Constitution and of section 11 of article I of the Constitution of the State of New York. Defendant alleges, *825 as the basis for its motion, not that the law alleged to have been violated does not apply equally to all residents of the State of New York, but that the enforcement of such valid law against this defendant is discriminatory. Pursuant to People v, Utica Daw’s Drug Co. (16 A D 2d 12) this court has held a hearing. This defendant’s claim is that the law has been enforced against it in a designedly discriminatory manner, in violation of the equal protection clauses of the State and Federal Constitutions. It has been decided that the law alleged to have been violated is constitutional, and this court is now asked to decide whether the enforcement of such law is selective only; whether its enforcement is a “ striking example ’ ’ to deter other violators; whether its enforcement is ‘ ‘ part of a bona fide rational pattern of general enforcement, in the expectation that general compliance will follow and that further prosecutions will be unnecessary”; whether the lack of enforcement of this particular statute is due to laxity on the part of law-enforcement agencies; or whether “ the selective enforcement is designed to discriminate against the persons prosecuted, without any intention to follow it up by general enforcement against others.”
The laws alleged to have been violated are contained in article 192 of the Penal Law of the State of New York, and read as follows:
“ § 2140. The Sabbath. The first day of the week being by general consent set apart for rest and religious uses, the law prohibits the doing on that day of certain acts hereinafter specified, which arc serious interruptions of the repose and religious liberty of the community.”
“ § 2141. Sabbath breaking. A violation of the foregoing prohibition is Sabbath breaking.”
“ § 2147. Public traffic on Sunday. All manner of public selling or offering for sale of any property upon Sunday is prohibited, except as follows: * *
Certain articles, the sale of which, or offering for sale of which, on Sunday was prohibited, were allegedly purchased at defendant’s store, and if the law prohibiting Sabbath breaking were to be held to be properly and impartially enforced, such sale, should it be proven, would render the defendant guilty of a violation of the sections quoted. It is well to note that the classification of a merchandise outlet as a drug, grocery, department, or other store, or of a gasoline station or bakery — to use a few of the names used — is a misnomer, for almost every merchandise outlet in this community sells, or offers for sale, many other articles than one would expect to find therein if its name were strictly construed, according to the testimony *826 received at this hearing. One witness, who instigated several of the arrests made, testified that although his chain of stores was classified as “ markets ” or “ food markets,” his stores were in direct competition with the defendant as far as toiletries and cosmetics were concerned.
These Sabbath-breaking laws have been held constitutional (People v. Friedman, 302 N. Y. 75, appeal dismissed 341 U. S. 907; People v. Finkelstein, 38 Misc 2d 791), and Taylor v. City of Pine Bluff (226 Ark. 309) upheld the constitutionality of a similar Sunday law on the ground that it referred to a class of stores. In Bargain City U. S. A. v. Dilworth (407 Pa. 129) an injunction on the basis of discriminatory enforcement of similar Sabbath-breaking laws was denied because the Police Commissioner and the District Attorney, who threatened the acts complained of, were no longer in office. It has been suggested that rather than attack the Sabbath-breaking laws, an appeal be made to the Legislature, if a change is to be made in their application (People v. Kupprat, 6 N Y 2d 88; People v. Kaplan, 8 A D 2d 163).
That a denial of equal protection of the law may be predicated upon intentional discriminatory enforcement of a valid or constitutional law has been recognized in Betty-June School v. Young (25 Misc 2d 909) (see, also, same case in 10 A D 2d 648); People v. Stover (12 N Y 2d 462). Discriminatory enforcement has been recognized as a proper defense in People v. Harris (182 Cal. App. 2d Supp. 837); City of Covington v. Gausepohl (250 Ky. 323); Yick Wo v. Hopkins (118 U. S. 356). The Yick Wo case has been cited many times. I quote only a portion of one paragraph of the opinion contained therein, as follows (pp. 373-374): “ In the present cases we are not obliged to reason from the probable to the actual, and pass upon the validity of the ordinances complained of, as tried merely by the opportunities which their terms afford, of unequal and unjust discrimination in their administration. For the cases present the ordinances in actual operation, and the facts shown establish an administration directed so exclusively against a particular class of persons as to warrant and require the conclusion, that, whatever may have been the intent of the ordinances as adopted, they are applied by the public authorities charged with their administration, and thus representing the State itself, with a mind so unequal and oppressive as to amount to a practical denial by the State of that equal protection of the laws which is secured to the petitioners, as to all other persons, by the broad and benign provisions of the Fourteenth Amendment to the Constitution of the United States. Though the law itself be fair on *827 its face and impartial in appearance, yet, if it is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make Unjust and illegal discriminations between persons in similar circumstances, material to their rights, the denial of equal justice is still within the prohibition of the Constitution.”
Reports of many other cases could be cited, for over the years courts and Judges have attempted to find a fair and workable solution to the enforcement of Sabbath-breaking laws, and over too many years the legislative bodies have been loath to recognize the differences brought about by varied and different methods of relaxation, pastimes, automation itself, in the refraining from doing many things on the Sabbath. Moreover, State and Federal legislation controlling the maximum hours of labor in which a citizen may be legally employed and, in effect, compelling at least one day’s rest in seven have rendered moot what was perhaps the prime purpose of the ancient Sabbath laws. Some of the cases cited — or decided — deal with injunctive relief; others with the interpretation and enforcement of municipal ordinances, and still others with criminal prosecution. If it is possible to generalize at all from the many decisions dealing with this subject, it is my opinion that if a law is found to be valid and constitutional but the enforcement is shown to be intentionally or designedly discriminatory, the defense of discriminatory enforcement is available to the person seeking to take advantage of that defense and is a complete shield as to him from the application of the law. It may properly be said that where a defense or claim of discriminatory enforcement of a constitutional law is made, the validity of that defense depends upon the facts shown in that particular case.
In some of the cases cited and in other opinions or cases to which they refer, the offer of proof or proof has not been strong enough to show an intentional discriminatory enforcement of the law involved. The opinion in Utica Daw’s Drug Co. (10 A D 2d 12, 21, supra) stated: “ It is only when the selective enforcement is designed to discriminate against the persons prosecuted, without any intention to follow it up by general enforcement against others, that a constitutional violation may be found.”
In the case at bar, using only references to, or excerpts from, the voluminous transcript of the testimony taken at the hearing-held herein, it appears that the motivating influence behind the attempt of individuals to. enforce the prohibitions of the Sabbath laws was economic, rather than a desire to have a law enforced. The enforcement was designed to discriminate against the defendant, and the other questions propounded must be answered *828 in the negative. One of the witnesses, who caused the arrest of several of his store’s competitors, testified: “ Our quarrel is with stores comparable to our own; they are not little independents ; they are serviced by voluntary cooperatives with all kinds of financial backing. * * * When Sunday openings are as extensive as they are, we think the law should be enforced. It wasn’t so important when they ivere mom and pop stores, but that isn’t the case today; these stores are as big as ours; they are served by extremely large wholesalers.” The same witness also stated: “ It was left to my judgment as to what program should be initiated to do something about getting these stores closed and the law regarding the Sunday openings enforced.” And, the testimony of numerous persons shows that this particular witness caused the first of the arrests presently before this court to be made and' personally brought the question of Sunday sales violations before the executive committee of the Retail Merchants’ Council of which he happened to be a member.
Moreover, it appears that the defendant’s store from which purchases were made was adjacent to, and in the same shopping-plaza as, one of the stores of this same complaining witness, and that it competed with that store economically. It cannot be said that the present prosecution had any deterrent effect upon other merchants, for the testimony taken is devoid of any reference to any stores closing because of the prosecution or prosecutions initiated. The Sheriff of Monroe County testified that.in more than 25 years, to his knowledge, the Sabbath laws had not been enforced in Monroe County by his office or any other official agency. The Chief of Police of the City of Rochester testified, in effect, that he had an ample staff to investigate any complaints made of the violation of the Sabbath laws. It is interesting to note that the defendant in this prosecution was arrested at the request of another merchant who had, himself, been arrested for a violation of the Sabbath laws. The public law enforcement officers did nothing on their own initiative to initiate or further the enforcement of this particular law, although over 200 purchases were made by agents of the defendant on Sunday, December 30,1962, from merchants of all descriptions, and the purchases made were all of articles whose sale was forbidden by the Sabbath law.
From the testimony it appears, and the court finds, that a relatively small group of merchants, known as the executive committee of the Retail Merchants’ Council, approved the action of one or more of its members in purchasing on Sunday articles that were not to be sold on that day, and that this relatively *829 small group initiated this prosecution (and the others) for solely economic reasons — meaning reasons of business competition— and not for reasons designed to effect a general obedience to the prohibition of the Sabbath law (Penal Law, §§ 2140, 2141, 2147). In this case the enforcement is found “ designed to discriminate against the persons prosecuted, without any intention to follow it up by general enforcement against others ’ ’.
Another point remains. It has been stated judicially that ‘ ‘ The wrong sought to be prevented is a wrong by public authorities ” (People v. Utica Daw’s Drug Co., 16 A D 2d 12, 18, supra). We have found that the discrimination involved in the case at issue was discrimination by members of the executive committee of the Ectail Merchants ’ Council. We have found that the public authorities, as such, did nothing on their own initiative to institute the enforcement which led to this hearing. However, the testimony amply reveals, and this court so finds, that the public authorities knew that the Sabbath laws were being violated by the community at large; that they did not and do not intend to enforce the particular statutes generally; that they co-operated with the executive committee to the extent that they served many of the warrants caused to be issued by the committee and, in the case at bar, actually prepared the information and made the arrest; that they also caused each of the 13 arrests made to be presented to the Grand Jury. In view of the foregoing, the court finds that the public authorities by prosecuting only those defendants whose arrest would not have resulted except for the prior instigation of the executive committee, and at the insistence of the executive committee became — although, perhaps, reluctantly — agents of that merchant group and, as such, chargeable with that group’s discriminatory design. Hence, this court must find that the wrong here sought to'be prevented is also a wrong by the public authorities.
In passing, the court alludes to the recent holding of People v. Pam (38 Misc 2d 296) in which the court held that the defendant in that case had failed to prove discriminatory enforcement of the Sunday or Sabbath law. In my opinion, that case is readily distinguishable from the one at bar, because there no evidence was offered or received as to the sale of goods whose sale was prohibited on Sunday. The testimony there can best be summed up by quoting (p, 299); “If he has proved anything at all herein, the defendant has proven merely some nonenforcement of the statute and that some other and nonrelated businesses were permitted to operate on Sundays.” Such was not the case as regards the evidence and testimony now before *830 this court. Here, the court must find that the statistical disparity between violations and enforcement most readily supports a conclusion of discrimination.
The reluctance of some courts in upholding the defense, which is the basis of this motion, is particularly referred to at page 20 of the Utica Daw’s Drug Co. case (supra). That reluctance has been defined as a fear that guilty persons would thereby escape prosecution and the flouting of the law would be encouraged. This court believes such a fear has no applicability to facts such as those it now considers. Or rather, such a fear is meaningless when the law in question is one which is already being violated openly and flagrantly by the community at large.
Upon all of the evidence received herein, and upon the law as this court understands it, the motion of defendant, the Paine Drug Company, to dismiss the indictment herein, upon the ground that it has been denied equal protection of the law, in all respects, is granted, and the indictment is dismissed.