Walter R. Hart, J.
There is sufficient evidence in the record to establish beyond a reasonable doubt the facts sot forth in the complaint, viz.:
“ That on July 15, 1963, at about 8:15 a.m. at Brooklyn & Clarkson Avenues in the County of Kings, City and State of New York, the defendants* * * committed the offense of disorderly conduct in violation of Sec. 722 subs. 2 and 3 of the Penal Law in that with intent to provoke a breach of the peace and under circumstances whereby a breach of the peace might be occasioned, they commited the following acts:
“ At the above-mentioned place there in a fenced-in construction site, access to which is gained through a driveway about 20 feet wide. At the entrance of this driveway, two Police barricades had been set up; in the gutter, flanking this driveway, additional Police barricades had been set up. When necessary, {o permit trucks or other construction equipment the [sic] enter or leave, the ‘ driveway ’ barricades were swung across *74 the sidewalk to the 'gutter ’ barricades, thus making an extension of the driveway across the sidewalk.
‘ ‘ Prior to 6:30 a.m. several persons had assembled at the site, carrying placards and marching up and down the sidewalk in a picket line; gradually, the number of persons increased. At about 8:30 a.m. a materials truck sought entrance. The aforementioned ‘ driveway ’ barricades were swung out, forming an access area for the truck and barring the intrusion of passersby. The defendants ignored the barricades and all entered the said access area carrying their placards and chanting and singing-songs. All then lay down in this area, thus preventing the entrance of the said truck. On two separate occasions, deponent warned the defendants that if they did not move they would be placed under arrest. The defendants ignored both warnings. Deponent thereupon told all the defendants that they were under arrest; the defendants thereupon rose and walked to a Patrol wagon. ’ ’
The evidence at the trial established that the incident occurred in front of a gate at the construction site of Downstate Medical College and that some of the defendants were out past the curb into the ‘ ‘ main thoroughfare ’ ’.
In advance of the trial a motion was made to dismiss the complaint on the grounds that the prosecution was in violation of defendants’ rights to equal protection of the law pursuant to the Fourteenth Amendment of the United States Constitution and was in violation of defendants’ rights as granted by the First Amendment of the United States Constitution and section 6 of article I of the New York State Constitution in that section 722 of the Penal Law is being illegally interpreted and enforced against defendants and upon the additional ground that section 722 is unconstitutional in that it violates the due process clause of the Federal and State Constitutions. Defendants also moved for a hearing on the motion for the purpose of permitting them to prove the violation of these constitutional rights. The motion was granted and defendants were accorded a preliminary hearing which extended over a period of Several days.
The gist of defendants ’ contentions at the hearing and renewed hereon on appeal is (1) that section 722 of the Penal Law is unconstitutional “ on its face ” for indefiniteness and (2) that section 722 was being unlawfully applied in that defendants were denied rights guaranteed to them by the First and Fourteenth Amendments of the Constitution and section 6 of article 1 of the New York State Constitution. At the conclusion of the hearing the trial court denied the motion to declare the statute void for indefiniteness. As to the second facet of the motion, *75 that too, was denied, the court holding that the issues of fact and law involved could only be determined after the trial at which time the motion could be renewed. Upon the trial on the charges made in the complaint, the motion was renewed at the close of the People’s case and denied.
The issues raised on defendants’ motion are presented to us for review.
With respect to the first aspect of the motion it is urged that the expression in the statute of the necessary “ intent to provoke a breach of the peace, or whereby a breach of the peace may be occasioned ’ ’ fails to define ‘ ‘ breach of peace ’ ’ and therefore lacks the specificity of a statute so that men of ordinary intelligence would not have to guess at its meaning. It is further urged that there is lack of specificity with respect to the acts (as distinguished from the intent) proscribed in subdivisions 2 and 3 of the statute; that subdivision 2 forbidding conduct of one who acts in such a manner as to annoy, disturb, obstruct, interfere with or be offensive to others is but “ a series of vague words ’ ’ and that subdivision 3 which makes the act of one who “ Congregates with others on a public street and refuses to move on when ordered by the police ” is also vague since it does not say under what circumstances a policeman may order a person to move on. This latter contention overlooks the provision of the statute which makes the offense punishable only when the congregating on the street and refusal to move produces a breach of the peace or whereby a breach of the peace may be occasioned.
With respect to the contention that the language of the statute “ breach of the peace ” is vague and uncertain we may advert to the statement of the court in Boyce Motor Lines v. United States (342 U. S. 337, 340) recently quoted in People v. Ulisano (18 A D 2d 432, 434-435) as follows: “ ‘ A criminal statute must be sufficiently definite to give notice of the required conduct to one who would avoid its penalties, and to guide the judge in its application and the lawyer in defending one charged with its violation. But few words possess the precision of mathematical symbols, most statutes must deal with untold and unforeseen variations in factual situations, and the proctical necessities of discharging the business of government inevitably limit the specificity with which legislators can spell out prohibitions. Consequently no more than a reasonable degree of certainty can be demanded. ’ ’ ’
In People v. Lewis (13 N Y 2d 180), the Court of Appeals held that subdivision (a) of section 1180 of the Vehicle and Traffic Law, a. reckless driving statute, was not too vague and *76 indefinite for a criminal law so as to render it unconstitutional. That statute provides: “No person shall drive a motor vehicle on a public highway at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing.”
The court held that the test of reasonable conduct under the circumstances as the norm was sufficiently specific. Neither the expressed forbidden intent nor the acts set forth in section 722 of the Penal Law are less specific. As stated in People v. Perry (265 N. Y. 362, 364) concerning disorderly conduct “ Bach case where the offense is charged must depend upon the time, place and circumstances of the act” (quoting from People v. Johnson, 86 Mich. 175, 177). This is'the same test of “ reasonableness ” applied in the pragmatic approach in determining whether conduct was negligence. The'statutory offense of disorderly conduct in some measure is the equivalent of the common-law offense and as was observed in People v. Nest (171 N. Y. 423, 429): “ A breach of the peace is an offense well known to the common law. It is a disturbance of public order by an act of violence, or by any act likely to produce violence, or which, by causing consternation and alarm, disturbs the peace and quiet of the community.”
As earlier stated, in People v. Nixon (243 N. Y. 182, 185): “It is difficult to define exactly and comprehensively the kind of conduct which ‘ tends to a breach of the peace,’ though a ‘ breach of the peace ’ was punishable at common law. A definition has been essayed by the Legislature in section 722 of the Penal Law ”,
It is our conclusion that the definition made by the Legislature is of the “ reasonable degree of certainty ” demanded by Boyce Motor Lines v. United States (supra).
It is also contended by defendants that the statute is unconstitutional since if a defendant is charged in the complaint with a violation of any one of the 11 subdivisions of section 722 he may, under the holding in People v. Hipple (263 N. Y. 242) be convicted of the offense if the proof establishes a violation of a different subdivision. This is not the precise holding of Hippie but it is clarified by People v. Feiner (300 N. Y. 391, 398, affd. 340 U. S. 315) which states that where a defendant is charged with a violation of any of the subdivisions of the statute and the proof establishes a violation of subdivision 2 (conduct which annoys, disturbs, obstructs or is offensive to others) the judgment of conviction will be upheld. The defendants’ argument, however, is moot in this case since they were charged specifically with a violation of both subdivisions 2 and 3 and the evidence *77 sustains the conviction under each of these subdivisions, viz., that the defendants acted “in such manner as to * * * obstruct * * “ others”. (Subd. 2.) (People v. Hipple, supra) and “ Congregated with others on a public street and refuse[d] to move on when ordered by the police ”. (Subd. 3.) (People v. Galpern, 259 N. Y. 279; People v. Friedman, 14 N. Y. S. 2d 389) and that such conduct could reasonably be expected to occasion a breach of the peace.
The second branch of defendants’ motion, that the statute as enforced is unconstitutional, is premised on the ground that the State of New York has acquiesced in, encouraged, aided and abetted racial discrimination in the construction industry and that such conduct by the State is tantamount to a statutory requirement of racial discrimination and is therefore violative of the equal protection of the law as guaranteed by the Fourteenth Amendment. It is contended that, since the construction work was for the State and is under State supervision, section 722 of the Penal Law was enforced in aid of racial discrimination and was unconstitutionally applied. Based upon this premise, defendants urge that “ It must be assumed in the absence of evidence to the contrary that the practices of the various subcontractors are authorized by the ultimate employer, the State of New York.” (Emphasis supplied.) The premise, however, is false because there is evidence negating its validity — evidence adduced by the defendants themselves.
Madison S. Jones, Executive Director of the City Commission on Human Bights, testified that the Mayor directed the commission to investigate all complaints of discrimination in building trades; that he, the Mayor, was prepared to resort to the right of cancellation of the contracts as provided by law upon a finding of discrimination and to other specific steps. Mr. Jones testified further: “I feel the officers of the city administration are endeavoring to end discrimination, intolerance and bigotry.”
George H. Fowler, Chairman of the State Commission on Human Bights, testified in detail as to all of the procedures followed in investigating and prosecuting complaints of discrimination in the construction industry; as to the legislation passed to prevent discrimination in apprenticeship programs and concluded his testimony by stating that the State of New York does not sanction discrimination.
The Attorney-General of the State of New York, Hon. Louis J. Lefkowitz, testifying at the behest of the defendants stated that in addition to acting on complaints filed with the said Commission on Human Bights his office initiates investigations into acts of discrimination and employment; that the Civil Bights *78 Bureau of the Attorney-General’s office has conferred with union officials in regard to their apprenticeship programs and several unions have taken in some Negro applicants in the apprenticeship programs.
The conclusion that discrimination against the Negro race in the construction industry is not a matter of State policy is reinforced by the opinion of Mr. Justice Stevens for the unanimous court in Gaynor v. Rockefeller (21 A D 2d 92). In that case an action was brought against State and city officials and certain labor unions. The cause of action against the State officers was for an injunction to restrain them from expending public funds on a State contract and seeking judgment requiring them to enforce sections 43 and 45 of the Civil Rights Law and section 200-e of the Labor Law with respect to such contract. In reversing the order which denied a motion to dismiss the complaint the court observed (pp. 97-98): “ The law provides punishment or penalties for persons or labor organizations which discriminate unlawfully (Penal Law, §§ 514, 701; Civil Rights Law, §§ 41, 43; Labor Law, § 220-e, subd. [c]). The State or municipality may cancel public works contracts upon a sufficient showing of acts in violation of law (Labor Law, § 200-e, subd. [d]; Administrative Code, § 343-8.0). Additionally, SCHR is given extensive powers, by statute, to investigate alleged discriminatory conduct and to take appropriate steps to effect its discontinuance (Executive Law, art, 15). * * * The discriminatory actions complained of are necessarily those of the contractors though, perhaps, under pressure from defendant unions. Such acts cannot be attributed to appellants public officials or considered governmental actions. Theirs is the power to cancel for, but not to correct, such actions.”
The court, in pointing out that Todd v. Joint Apprenticeship Comm. of Steel Workers of Chicago (223 F. Supp. 12) is not applicable, stated (p. 98): “ In that case there was a clear showing that the Federal Government through two of its agencies and the State Government through one of its agencies made it possible for the defendants to realize and perpetuate discriminatory practices against four qualified applicants solely because they were Negr'oes. The agencies were fully informed and failed to take any corrective action.”
Moreover, it may not be said that section 722 of the Penal Law is being applied in other than an evenhanded manner so as to deny defendants’ rights to equal protection under the Constitution (as there was in the enforcement of the Sabbath Law statute in People v. Paine Drug Co., 39 Misc 2d 824), There is no basis in fact or in law for the contention that the provisions *79 of the statute are enforced in furtherance of a policy of discrimination by the State. Accordingly, the case of Lombard v. Louisiana (373 U. S. 267) is inapplicable. Defendants’ further reliance on the case of Garner v. Louisiana (368 U. S. 157) is misplaced. In that case places of business in Louisiana catering to both white and Negro patrons, petitioners, who were Negroes, took seats at lunch counters where only white persons customarily were served, and remained quietly in their seats after being told that they could not be served there. They made no speeches, carried no placards and did nothing else to attract attention to themselves, except to sit at the lunch counters. They were not asked to leave by the proprietors or their agents; but they were asked to leave by police officers. Upon failing to do so, they were arrested and charged with “ disturbing the peace.” They were convicted in a State court under a State statute which defines “ disturbing the peace ” as the doing of specified violent, boisterous or disruptive acts and 1 ‘ any other act in such a manner as to unreasonably disturb or alarm the public ’ ’ (p. 165).
The reversal of the judgments of conviction in the State courts by the United States Supreme Court was predicated on the finding that they were so totally devoid of evidentiary support as to render them unconstitutional under the due process clause of the Fourteenth Amendment (p. 163).
As heretofore noted defendants also contend that the statute is enforced so as to contravene their right of freedom of expression under the First and Fourteenth Amendments of the United States Constitution and sections 8 and 9 of article I of the New York State Constitution. It is urged that this freedom of speech is not restricted to verbal statements but may take the form of picketing, citing Thornhill v. Alabama (310 U. S. 88). To sustain their position defendants cite the case of Edwards v. South Carolina (372 U. S. 229) wherein the United States Supreme Court reversed a judgment convicting defendants who were engaged in peaceful picketing on State grounds for the purpose of causing an eradication of discriminatory actions against Negroes. In that case, however, the court pointed out (p. 232): “No vehicle was prevented from entering or leaving the * * * area [-State grounds] ”.
The court further observed (p. 236): “ We do not review in this case criminal convictions resulting from the evenhanded application of a precise and narrowly drawn regulatory statute evincing a legislative judgment that certain specific conduct be limited or proscribed. If, for example, the petitioners had been convicted upon evidence that they had violated a law regulating *80 traffic, or had disobeyed a law reasonably limiting the periods during which the State House grounds were open to the public, this would be a different case.” (Emphasis supplied.)
The true import of Edwards may be found in Henry v. Rock Hill (376 U. S. 776, 777-778) wherein the Supreme Court stated: “We now think Edwards and Fields control the result here. As in those cases, the petitioners here, while at a place where the State’s law did not forbid them to be, were engaged in the ‘ peaceful expression of unpopular views.’ Edwards v. South Carolina, 372 U. S., at 237. They assembled in a peaceful, orderly fashion in front of the City Hall to protest segregation. They carried signs to that effect and they sang patriotic and religious songs. Although white onlookers assembled, no violence or threat of violence occurred and traffic was not disturbed. After 15 minutes of this, they were arrested for failure to disperse upon orders. Here, as in Edwards and Fields, petitioners ‘ were convicted of an offense so generalized as to be, in the words of the South Carolina Supreme Court “not susceptible of exact definition.” Ibid. And here as there “ they were convicted upon evidence which showed no more than that the opinions which they were peaceably expressing were sufficiently opposed to the views of the majority of the community to attract a crowd and necessitate police protection. ’ ’ ’ Ibid. ’ ’ (Emphasis supplied.)
Here, on the other hand the record discloses that defendants did interfere with traffic in the public highway, obstructed the entry of a truck into the construction site and were repeatedly importuned by police officers to get out of the roadway and that portion of the sidewalk which they were blocking so as to permit the truck to enter the gate and were exhorted ‘ ‘ to resume lawful picketing.”
As stated in Cantwell v. Connecticut (310 U. S. 296, 308): ‘ ‘ When clear and present danger of riot, disorder, interference with traffic upon the public streets, or other immediate threat to public safety, peace, or order, appears, the power of the State to prevent or punish is obvious.”
The evidence in the case here on appeal established beyond a reasonable doubt that there was a clear and present danger of disorder and interference with traffic upon the streets and that the conduct of defendants was likely to occasion a breach of the peace. Such conduct was not justified by the social objectives of the defendants. As observed by the court in Matter of TransLux Distr. Corp. v. Board of Regents (14 N Y 2d 88, 91): “ Conduct that is proscribed for valid public purposes is not immune merely because engaged in with a view to expression (Giboney *81 v. Empire Stor. Co., 336 U. S. 490). For example, in People v. Stover (12 N Y 2d 462, supra, app. dsmd. for want of a substantial Federal question 375 U. S. 42) this court upheld an ‘ Aesthetic ’ ordinance prohibiting the display of soiled laundry on a clothesline in the defendants’ front yard, despite the fact that the display was an expression of social protest.”
The judgment should be affirmed.
Bbowh and Groat, JJ., concur with Hart, J.
Judgment affirmed.