John V. Vaughn,
J. The defendant was arrested and charged with committing the offense of disorderly conduct in violation *986 of section 240.20 of the Penal Law. The defendant, dressed as a turkey, in conjunction with another, dressed as Santa Claus, was making speeches and handing out literature criticizing the commercialism of Christmas, the American involvement in the Vietnam War, the Kent State incident, racial inequality, and other matters. This conduct caused crowds of 75 to 100 people to gather, subsequently increasing to about 150 blocking the sidewalk and causing the blockage of part of the street, to the extent that both pedestrian and vehicular traffic were impeded. Moreover, police authorities asked the defendant to move on, which request was refused.
The provisions of section 240.20 of the Penal Law are:
“ A person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof:
“ 1. He engages in fighting or in violent, tumultuous or threatening behavior; or
“2. He makes unreasonable noise, or
“3. In a public place, he uses abusive or obscene language, or makes an obscene gesture; or
“ 4. Without lawful authority, he disturbs any lawful assembly or meeting of persons; or
“5. He obstructs vehicular or pedestrian traffic; or
“ 6. He congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse; or
“ 7. He creates a hazardous or physically offensive condition by any act which serves no legitimate purpose.
“Disorderly conduct is a violation.”
It should be noted that an accused’s conduct, in order to constitute the offense, must have been with intent to cause public inconvenience, annoyance or alarm or, in the alternative, the accused’s conduct must have been such that it recklessly created a risk of public inconvenience, annoyance or alarm.
The defendant maintains that the charge should be dismissed on three grounds.
1. The information in its accusatory portion charged the defendant with violating only subdivision 6 of section 240.20 and that therefore any evidence regarding the violation of any other subdivision of that statute is irrelevant and not admissible.
2. The defendant’s conduct did not constitute a violation of the statute, primarily because the necessary elements of intent or, in the alternative, recklessness, were absent.
*987 3. Even if the defendant’s conduct did constitute a violation of section 240.20, his words and actions were constitutionally protected by the First and Fourteenth Amendments of the United States Constitution and by the correlative sections of the New York State Constitution, dealing with freedom of speech and of assembly.
I.
The defendant’s first contention regarding the charge in the information can be disposed of quickly. The Court of Appeals has determined that when an accused is charged with violating a specific subdivision of the disorderly conduct statute, a judgment of conviction in such a case will be affirmed if the evidence establishes a violation of any of the subdivisions of that section. (People v. Carcel, 3 N Y 2d 327 [1957].) Indeed, it has been held that the accusatory instrument need not even mention any particular section number of the statute in question. (People v. Dioguardo, 303 N. Y. 514 [1952].)
n.
We turn now to the defendant’s next contention that his conduct did not constitute disorderly conduct within the meaning of the statute. The cases cited by the defendant in support of his position are, in order:
People v. Phillips (245 N. Y. 401 [1927]); People v. Smith (19 N Y 2d 212 [1967]); People v. Monnier (280 N. Y. 77 [1939]); People v. McCauliff (267 N. Y. 581 [1935]); People v. Reid (180 Misc. 289 [County Ct. Madison County, 1943]); People v. Hill (60 Misc 2d 277 [County Ct., Yates County, 1969]); People v. Chesnick (302 N. Y. 58 [1950]).
The court will now consider each of these cases individually and distinguish them factually from the case at bar.
The holding in the Phillips case was that the evidence was simply insufficient to sustain a conviction in that there was no proof that the defendant collected the people who did collect or that he acted with an intent to provoke a breach of the peace. The Trial Judge charged the jury that “ 1 if there is no strike and he is marching up and down in front of this place of business he is guilty of disorderly conduct ’ ”. (p. 403). The Court of Appeals held that this was not sufficient to support a conviction.
Similarly, in the Smith case, the court wrote that the People must prove that the defendant collected those who did collect and that he did so either with the intent to provoke a breach of the peace or that a breach of the peace would naturally result *988 from what he did. In that case, the court felt that the crowd was drawn primarily by the apprehension and arrest of a speeding driver, and not by the defendant. In the instant case, the defendant makes a similar argument, pointing out that the arresting officer testified that he could not say how much of the crowd was drawn by the defendant and how much of it was gathered by the Santa Claus. We feel that the question is merely theoretical. There was sufficient evidence to establish that at least some of the crowd was attracted by the defendant. Moreover, it is apparent that, even if the Santa Claus were not present, some sort of a crowd would surely collect to watch a man dressed as a turkey.
The next four cases cited by the defendant in reliance thereon can be succinctly distinguished. In McCauliff, the altercation that was the basis for the disorderly conduct charge took place in the defendant’s home; and in Reid and Ghesnick, the commotion occurred in the hallway of an apartment building. In all three cases, the courts held that the inconvenience or annoyance created was a private one and not a public one: clearly a different situation from the case before us now. And in the Monnier decision, the commotion was ruled a private one because it was caused by the defendant over the telephone.
That leaves us with the matter of People v. Hill. In that case, a police officer heard a single loud blast of a car horn at 3:00 a.m., drove into a parking lot to question the defendant and some other people as to who was responsible, and then ordered the defendant out of the parking lot. He refused to go. The court' declined to convict the defendant primarily because there was no intent on his part to cause any public .inconvenience nor did he recklessly create the risk thereof, but rather the commotion arose spontaneously from the circumstances described.
Perhaps the leading case in New York for the guidelines for disorderly conduct is People v. Nixon (248 N. Y. 182 [1928]). Six appeals were argued together-; two cases were reversed, and in four the convictions were affirmed. The defendants were picketing in a labor dispute, parading four abreast, but doing so in a quiet and orderly fashion, not threatening, abusive or insulting. A few pedestrians were forced to enter the roadway in order to get around the picketers, but they were not annoyed or inconvenienced by this fact. There was no order by any police officer to the picketers to disperse. With reference to the two reversals of convictions, the Court of Appeals wrote (pp, 187-188): “ The sole question is whether a number of pedestrians walking, quietly, four abreast, on the sidewalk, ere *989 ating no excitement or disturbance, may without warning by the police be arrested for disorderly conduct * * * In the. absence of evidence that the defendants caused substantial annoyance to others, of persisted in their conduct after protest from others or warning from a police officer, we find the evidence insufficient to sustain the conviction of the defendants in this case.” (Emphasis added). The Nixon court then discussed and specifically distinguished the other four cases in which the defendants had been warned to stop what they were doing (pp. 188-189): “ Police officers are guardians of the public order. Their duty is not merely to arrest offenders but to protect persons from threatened wrong and to prevent disorder. In the performance of their duties they may give réasonable directions. Present at the point where the defendants were congregating they might early sense the possibility of disorder. Even a protest from pedestrians who were annoyed by the defendants’ conduct might be a significant element in determining whether persistence in such conduct w.as wrongful. Enough has been shown in these cases to justify the officers in warning the defendants. Refusal to heed the warning so given; persistence in parading the street in groups thereafter, is, perhaps, so significant of a contumacious disregard of the rights of others that it supports the finding of guilt of the defendants. In these cases the judgments must be affirmed.”
On the other hand, in People v. Perry (265 N. Y. 362 [1934]) the defendants’ convictions for disorderly conduct were reversed where they had waged a fist fight in a restaurant after closing. The court ruled that the defendants had not annoyed, disturbed or interfered with any members of the public, and coined the phrase, subsequently much quoted, that a breach of the peace sufficient to sustain a conviction for disorderly conduct must be “ a disturbance of the tranquillity of the People of the State ” (p. 365). 1
The Court of Appeals again addressed itself to the question of disorderly conduct in People v. Carcel (3 N Y 2d 327, supra). The two defendants were arrested for picketing with placards at the entrance to the United Nations building. They were approaching people entering and leaving the building and handing out leaflets. They did ignore a police officer’s order to move. However, despite such refusal, their convictions were not upheld, on the grounds that they had not “ caused any serious annoyane'e to pedestrians ” (p. 332) and also that two people alone do not constitute a ‘ ‘ congregation ’ ’ within the meaning of the statute.
*990 One of the most recent proclamations by the Court of Appeals on the disorderly conduct statute carries great significance in the case before us. In People v. Todaro (26 N Y 2d 325 [1970]), the defendant appealed from his disorderly conduct conviction primarily on the ground that the People had failed to establish that there was in fact any public disorder. However, the court pointed out that that argument ‘ £ ignores the very terms of the statute itself” in that it overlooks the possibility that the defendant may have recklessly created the risk of public disorder— proof of which will sustain conviction. The court remarked: “ The trial court could well have found beyond a reasonable doubt that the appellant was aware of and consciously disregarded a substantial and unjustifiable risk that ‘ public inconvenience, annoyance or alarm ’ might result from his [conduct].” (People v. Todaro, p. 329).
The defendant also claims that the People have failed to prove the requisite ‘£ intent to cause public inconvenience, annoyance or alarm”. However, the People do not necessarily have to show such an intent. Under the language of the statute, an accused can be found guilty of disorderly conduct if he recklessly creates the risk of public inconvenience, annoyance or alarm. In analyzing the facts of the case at bar, this court does so find that the defendant was aware of and consciously and recklessly disregarded the risk of public inconvenience or annoyance, a risk created by his own conduct.
In addition, we find that the defendant did cause the obstruction of both vehicular and pedestrian traffic, and he did congregate with other persons in a public place, refusing to comply with a lawful order of the police to disperse. The remaining question then is whether or not his conduct, despite constituting a violation of the New York Penal Law, is nevertheless protected by the constitutional guarantees of the right to free speech and free assembly. This question is an important one, and the factual determination that must be made is admittedly a close one.
HI.
The defendant’s brief on this point cites several United States Supreme Court cases for the general proposition that the right of free speech and assembly is not absolute but must be exercised in consonance with peace and good order, but also that the regulation thereof must not be merely a guise for the suppression of dissident viewpoints. There is, of course, no disagreement with this general principle. However, there must be a case by case analysis of the pertinent decisions in this area *991 of the law in order to clearly delineate the meaning of the precedents and thus to reach the just determination in the case at bar.
The defendant’s brief placed particular reliance on the following decisions:
Edwards v. South Carolina (372 U. S. 229 [1963]); Cox v. Louisiana (379 U. S. 536 [1965]); People v. Losinger (63 Misc 2d 577 [Rochester City Ct,, 1970]); People v. Carcel (3 N Y 2d 327 [1957]); People v. Nixon (248 N. Y. 182 [1928]); People v. Galamison (43 Misc 2d 72 [App. Term, 2d Dept., 1964]); People v. Penn (48 Misc 2d 634 [App. Term,1st Dept., 1964]).
The last three cases can be dealt with summarily. The Nixon court refused to uphold the conviction even though pedestrians were forced into the roadway to pass the defendants. However, the court also clearly indicated that its decision would have been different if there had been a prior police directive to the defendants to disperse and a refusal to do so. This is what occurred in the case at bar. In Galamison and Penn, the defendants were convicted for having lain down in the streets or jumped police barricades in order to block traffic. The defendant contends that this is the only degree of obstruction that will sustain a conviction for disorderly conduct in spite of a defendant’s constitutional rights; however, as a discussion of the cases will show, this is not true.
A much quoted case in this area is Edwards v. South Carolina (supra). The defendants were Negro high school students who assembled in a group of about 50 or 60 to protest racial discrimination, parading peacefully on the grounds of the State House. A crowd of some 200 to 300 onlookers gathered. The court made explicit findings of fact that there was no obstruction of pedestrian or vehicular traffic within the State House grounds, nor was there any impediment of pedestrian traffic because of the bystanders on the public sidewalks. The police told the demonstrators to disperse. They ignored this command, and began to sing patriotic and religious songs. On these facts, the defendants were convicted of breach of the peace. The Supreme Court upheld the State court’s finding that there was a breach of the peace, but ruled nevertheless that the arrests and convictions infringed the defendants’ constitutionally protected rights of free speech, free assembly, and freedom to petition for redress of their grievances. The gravamen of the court’s ruling was that the statute in question was so broadly worded as to allow the possibility that it could be used to suppress the expression of unpopular social and political view *992 points, and that the statute was in fact so used in the situation at hand.
Similarly, in Cox v. Louisiana (supra) (which were two appeals decided simultaneously), the Rev. Mr. B. Elton Cox, the leader of a civil rights demonstration, was arrested and charged with four offenses including disturbing the peace. Approximately 200 students, mostly black, took part in a peaceful march in downtown Baton Rouge. The court found as fact that the students gathered on the sidewalk about five deep and spread almost the entire length of the block, and, expressly, that the group did not obstruct the street. A crowd of about 100 to 300 curious onlookers gathered. The demonstrators sang some songs and Rév. Cox spoke to the crowd. He was then asked by the police to move on but he refused. The court noted (p. 544) that the facts in this case were “ strikingly similar to those present in -Edwards v. South Carolina ”. The only conduct by which the State argued the demonstrators violated the statute was the loud cheering, clapping and singing by the students. The court reiterated its feeling in the Edwards case that the evidence 1 ‘ ‘ showed no more than that the opinions which * * * [the students] were peaceably expressing were sufficiently opposed to the views of the majority of the community to attract a crowd and necessitating police protection’”, (p. 551). It is also significant that in the Cox decision, as in Edwards, the court found the underlying breach of the peace statute to have been unconstitutionally vague in the breadth of its scope. The court then addressed itself to the central issue which it noted it had dealt with in many decisions; namely, ‘ ‘ the right of a State or municipality to regulate the use of city streets and other facilities to assure the safety and convenience of the people in their use and the concomitant right of the people of free speech and assembly ”, (p. 554). The court then cited a long string of cases which had commented on this question, and summarized them as follows (p. 554): “Prom these decisions certain clear principles emerge. The rights of free speech and assembly, while fundamental in our democratic society, still do not mean that everyone with opinions or beliefs to express may address a group at any public place and at any time. The constitutional guarantee of liberty implies the existence of an organized society maintaining public order, without which liberty itself would be lost in the excesses of anarchy. The control of travel on the streets is a clear example of governmental responsibility to insure this necessary order. A restriction in that relation, designed to promote the public convenience in the *993 interest of all, and not susceptible to abuses of discriminatory application, cannot be disregarded by the attempted exercise of some civil right which, in other circumstances, would be entitled to protection.” Having said this, the Supreme Court again voiced its concern that the unconstitutionally broad breach of the peace statute allowed the authorities in Baton Rouge to permit or to prohibit parades or street meetings in their “ completely uncontrolled discretion ”, enabling such authority to invoke the statute “ to engage invidious discrimination among persons or groups either by use of a statute providing a system of broad discretionary licensing power or, as in this case, the equivalent of such a system by selective enforcement of an extremely broad prohibitory statute.” (p. 557-558).
It is the holding of this court that the reasoning and the philosophy of the United States Supreme Court in the Edwards and Cox decisions do not support the defendant’s case but rather lend weight to the People’s position. There are no undertones of racial discrimination on a broad scale in the instant case, this being the underlying rationale in the Edwards and Cox rulings.
Later Supreme Court cases lend even more support to the People’s position. In Adderley v. Florida (385 U. S. 39 [1966]), the defendants were charged with trespass on the premises of a county jail. Their purpose in being there was to protest local practices of racial segregation. The defendants appealed on the basis that they were deprived of their constitutional rights, l'elying on Edwards and Cox. The court distinguished both those cases on the ground that the statutes involved there were held to be unconstitutionally broad and vague, where as the Florida statute in the Adderley matter was not susceptible of such criticism. Furthermore, the court in Adderley found that the demonstrators blocked vehicular passage over the driveway up to the entrance to the jail and refused to follow orders to disperse. The court also noted that the orders of the Sheriff were not issued because he objected to what the demonstrators were saying or singing or because he disagreed with the objectives of their protest but rather that he objected only to their presence on that part of the jail grounds reserved for jail use. In upholding the defendants’ convictions the court rejected their arguments that they had a constitutional right to stay on the jail premises. “ Such an argument has as its major unarticulated premise the assumption that people who want to propagandize protests or views have a constitutional right to do so whenever and however and wherever they please. That concept of constitutional law was vigorously and forthrightly rejected *994 in [the two Cox decisions].” (Adderley v. Florida, supra, pp. 47-48).
A similar decision was reached in Bachellar v. Maryland (397 U. S. 564 [1970]). The convictions arose out of a demonstration protesting the Vietnam War in front of a United States Army recruiting station. Approximately 30 to 40 protestors were marching peacefully in a circle on the sidewalk. A crowd of onlookers gathered nearby and across the street. The demonstrators were handing out leaflets and debating with some of the onlookers. The court was careful to point out that, at this point in the sequence of events, no breach of the peace had occurred and the defendants’ conduct was constitutionally protected. Subsequently, six of the demonstrators staged a sit-in in the recruiting station. They refused an order to leave and remained sitting or lying on the sidewalk, so that they had to be picked up and carried to the patrol wagon. A crowd of 50 to 150 people, including the demonstrators, was in the area during this period. The court commented that, based on this evidence, the jury could have rested its verdict on any of a number of grounds, in light of the instructions given by the Trial Judge. However, because one of the grounds for the verdict may have been merely the defendants’ offensive views on the Vietnam war, and because a conviction can not rest on such a basis, the verdict was overturned. But the court did comment that the “ petitioners’ convictions could constitutionally have rested on a finding that * * * they refused to obey police commands to stop obstructing the sidewalk in this manner and move on ”. (Bachellar v. Maryland, supra, p. 571.)
Let it be clearly reflected that this court is convicting this defendant for the reasons already set forth, and we make no comment and have been in no way influenced by whatever the defendant may have said in his speeches. In fact, the record is virtually bare in this regard. We emphatically reaffirm the right of this defendant to embrace and vigorously to propagate his views.
We turn now to a review of the New York cases regarding the conflict between an individual’s right to free speech and assembly and the State’s police power to maintain public order. The leading case in this jurisdiction is People v. Turner (48 Misc 2d 611 [App. Term, 1st Dept., 1965], affd. without opn. 17 N Y 2d 829 [1966]). An anti-war rally was held in Duffy Square, an island located at the intersection of Broadway and 7th Avenue in Manhattan. There were about 200 people gathered on the island and perhaps 4,000 to 5,000 people in the area sur *995 rounding the square. The police informed the leaders of the demonstration that they were interfering with pedestrian and vehicular traffic and that people were being forced to walk into the street in order to get by, and that they would have to demonstrate somewhere else. This directive sparked a very vocal protest from the demonstrators, and some running around, urging one another to stand ground. Some of them went limp when police attempted to remove them. Others lay down in the middle of Broadway, obstructing traffic. The 17 defendants denied most of the factual allegations, and were unanimous in their testimony on one point — that whatever commotion occurred, any running, shouting or prostrating, took place only after, and as a result of, the police order to disperse. They maintained that the demonstration, up to that point, had been peaceful and orderly, and had been confined to Duffy Square itself, and not the adjoining streets and sidewalks. In light of this, they argued, among other things, that the order to disperse was an unwarranted interference with their constitutional rights; that their conduct subsequent to that order was in reaction to such unlawful command; and that, while it may have been disorderly under the statute, it was then justified as having been necessary for the protection and assertion of such constitutional rights.
The court framed the heart of the case as the lawfulness of the defendants’ conduct and the appropriateness of the police command. With respect to the defendants’ conduct, the court did not distinguish their actions before the order to disperse from their actions after it. The court felt that, even if the police command be deemed unlawful, their conduct, described as 1 ‘ generally causing bedlam ’ ’, was clearly such as to “ annoy, disturb, interfere with, obstruct, or be offensive to others ” — the language of proscription found in the statute.
In discussing the police command to disperse and its validity in light of the constitutional issues, the court undertook a painstaking review of the case law in this area, including most of the holdings referred to in the instant opinion. The court specifically and very carefully distinguished the Supreme Court decisions in Edwards and Cox, precisely on the same grounds explained earlier in this opinion. The heart of the opinion follows (p. 625): “ Contrary to appellants’ assertion, subdivision 3 [of the disorderly conduct statute] would not, by its terms, ‘ prohibit all street meetings ’. It requires both that defendant 1 congregates with others ’ and ‘ refuses to *996 move on when ordered by the police There must be a showing of an actual or potential breach of the peace together with a congregating and refusal to obey the police order. Although those congregating may do so in an orderly and inoffensive way, in the absence of a showing that the police direction ‘ was purely arbitrary and was not calculated in any way to promote the public order ’, the refusal to obey violates the statute
“ Clearly, the application of [the statute] to the convictions here involved was not an attempt to suppress unpopular views, but was aimed solely at the maintenance of order and the avoidance of obstruction to vehicular and pedestrian traffic. There is no ‘ unlimited power to order people off the streets ’, but rather an authority to reasonably regulate to avoid actual or potential breaches of the peace in the public interest. . There is no evidence that administration of the statute here has been ‘ otherwise than in a fair and nondiscriminatory manner which the State court has construed it to require ’ (Cox v. New Hampshire, 312 U. S. 569, 577). Finally, it should be noted that the Court of Appeals in affirming this court’s determination in People v. Penn (16 N Y 2d 581) was aware of the decision in Cox v. Louisiana (see 16 N Y 2d 581, 582) and specifically held that there was no denial of the defendants ’ constitutional rights.” (p. 629).
In comparing the Turner situation with the instant matter, the court notes the testimony of the arresting officer that the size of the crowd grew, from 75 or 100 people when he arrived on the scene, to about 150 people later on. Also, the officer felt it was necessary to call for police reinforcement. Clearly, he sensed the “potential breach of the peace” referred to in Turner, and because of that and with good reason he ordered the defendant to move on. And, just as in Turner, “the refusal to obey violates the statute.” It is the holding of this court that the authority of People v. Turner, unanimously affirmed by the Court of Appeals, is controlling in the case at bar, and the defendant must be found guilty in that he congregated with other persons in a public place and refused an order to move.
We should mention two other New York cases decided after the Turner decision. In People v. Cagan (60 Misc 2d 1037 [App. Term., 1st Dept., 1969] Per Curiam), the defendant was convicted of violating section 240.20 of the P-enal Law in that he obstructed vehicular or pedestrian traffic (subd. 5) and created a hazardous or physically offensive condition by an act *997 which served no legitimate purpose (subd. 7). The defendant had addressed a crowd of several hundred at an anti-war rally in Battery Park in Manhattan. He then urged the crowd to march up the middle of the street to their destination. However, he was arrested before the march began, and hence the court overturned his conviction because he neither marched nor personally obstructed traffic, nor did he instruct anyone to obstruct traffic or to create a hazardous condition by an act which served no legitimate purpose, as the statute prohibits.
Clearly, this case is distinguishable on its facts from the Turner matter and from the instant matter.
Finally, the court should note a case heavily relied on by the defendant, People v. Losinger (63 Misc 2d 577 [Rochester City Ct, 1970]). The facts of the case are very similar to the instant situation. The 10 defendants, dressed in various % _____ ' costumes, staged anti-Vietnam War skits in a downtown area of Rochester in the presence of Christmas shopping crowds, in the vicinity of major department stores. Spectators watching these demonstrations numbered about 30 to 40 persons. The court’s findings of fact were that there was no incidence of violence or threats of violence; that no vehicular traffic was directly affected; that some pedestrians stepped into the street rather than pass through or among the defendants on the sidewalk, or wait for the skit to end; and that the defendants were asked by the police to disperse and refused to do so. The court refused to convict the defendants on the authority primarily of Edwards v. South Carolina and People v. Cagan. It is respectfully submitted that the court’s decision in People v. Losinger was incorrect. That court remarked of the Cagan ease that it is “ most recent and relevant” to the Rochester incident. Most recent it was, but certainly not as relevant as People v. Turner — a case never mentioned in the court’s opinion. Furthermore, the court wrote that the first and primary test as to whether or not the conduct in question was constitutionally protected is ‘ ‘ whether or not there is evidence of violence or threat of violence ” (People v. Losinger, supra, p. 578). An analysis of the decisional law simply does not confirm that statement.
The defendant is found guilty as charged.