236 U.S. 273 (1915)
FOX
v.
STATE OF WASHINGTON.
No. 134.
Supreme Court of United States.
Submitted January 19, 1915.
Decided February 23, 1915.
ERROR TO THE SUPREME COURT OF THE STATE OF WASHINGTON.
*274 Mr. Gilbert E. Roe for plaintiff in error.
Mr. W.V. Tanner, Attorney General of the State of Washington, and Mr. Fred G. Remann, for defendant in error.
*275 MR. JUSTICE HOLMES delivered the opinion of the court.
This is an information for editing printed matter tending to encourage and advocate disrespect for law contrary to a statute of Washington. The statute is as follows: "Every person who shall wilfully print, publish, edit, issue, or knowingly circulate, sell, distribute or display any book, paper, document, or written or printed matter, in any form, advocating, encouraging or inciting, or having a tendency to encourage or incite the commission of any crime, breach of the peace or act of violence, or which shall tend to encourage or advocate disrespect for law or for any court or courts of justice, shall be guilty of a gross *276 misdemeanor"; Rem. & Bal. Code, § 2564. The defendant demurred on the ground that the act was unconstitutional. The demurrer was overruled and the defendant was tried and convicted. 71 Washington, 185. With regard to the jurisdiction of this court it should be observed that the Supreme Court of the State while affirming that the Constitution of the United States guarantees freedom of speech, held not only that the act was valid in that respect but also that it was not bad for uncertainty, citing Waters-Pierce Oil Co. v. Texas, 212 U.S. 86, so that we gather that the Constitution of the United States and especially the Fourteenth Amendment was relied upon, apart from the certificate of the Chief Justice to that effect.
The printed matter in question is an article entitled "The Nude and the Prudes" reciting in its earlier part that "Home is a community of free spirits, who came out into the woods to escape the polluted atmosphere of priest-ridden, conventional society"; that "one of the liberties enjoyed by Homeites was the privilege to bathe in evening dress, or with merely the clothes nature gave them, just as they chose"; but that "eventually a few prudes got into the community and proceeded in the brutal, unneighborly way of the outside world to suppress the people's freedom," and that they had four persons arrested on the charge of indecent exposure, followed in two cases, it seems, by sentences to imprisonment. "And the perpetrators of this vile action wonder why they are being boycotted."  It goes on "The well merited indignation of the people has been aroused. Their liberty has been attacked. The first step in the way of subjecting the community to all the persecution of the outside has been taken. If this was let go without resistance the progress of the prudes would be easy." It then predicts and encourages the boycott of those who thus interfere with the freedom of Home, concluding: "The boycott will be pushed until these invaders will come to see the *277 brutal mistake of their action and so inform the people." Thus by indirection but unmistakably the article encourages and incites a persistence in what we must assume would be a breach of the state laws against indecent exposure; and the jury so found.
So far as statutes fairly may be construed in such a way as to avoid doubtful constitutional questions they should be so construed; United States v. Delaware & Hudson Co., 213 U.S. 366, 407, 408; and it is to be presumed that state laws will be construed in that way by the state courts. We understand the state court by implication at least to have read the statute as confined to encouraging an actual breach of law. Therefore the argument that this act is both an unjustifiable restriction of liberty and too vague for a criminal law must fail. It does not appear and is not likely that the statute will be construed to prevent publications merely because they tend to produce unfavorable opinions of a particular statute or of law in general. In this present case the disrespect for law that was encouraged was disregard of it  an overt breach and technically criminal act. It would be in accord with the usages of English to interpret disrespect as manifested disrespect, as active disregard going beyond the line drawn by the law. That is all that has happened as yet, and we see no reason to believe that the statute will be stretched beyond that point.
If the statute should be construed as going no farther than it is necessary to go in order to bring the defendant within it, there is no trouble with it for want of definiteness. See Nash v. United States, 229 U.S. 373. International Harvester Co. v. Kentucky, 234 U.S. 216. It lays hold of encouragements that, apart from statute, if directed to a particular person's conduct, generally would make him who uttered them guilty of a misdemeanor if not an accomplice or a principal in the crime encouraged, and deals with the publication of them to a wider and less *278 selected audience. Laws of this description are not unfamiliar. Of course we have nothing to do with the wisdom of the defendant, the prosecution, or the act. All that concerns us is that it cannot be said to infringe the Constitution of the United States.
Judgment affirmed.