365 F.2d 675
 UNITED STATES of America, Appellee,
v.
James Oliver JONES, Jr., Mat Jones, Hillel Samuel Liebert, Willie Lawrence McCray, Daniel Robert Moses, Peter Orris and Eugene Rouse, Jr., Appellants.
 No. 452.
 Docket 30423.
 United States Court of Appeals Second Circuit.
 Argued June 22, 1966.
 Decided August 4, 1966.
 
 Martin M. Berger, New York City (Michael Standard, New York City, on the brief), for appellants.
 John S. Martin, Jr., Asst. U. S. Atty. (Robert M. Morgenthau, U. S. Atty., for Southern District of New York, New York City, John E. Sprizzo, Asst. U. S. Atty., on the brief), for appellee.
 Before LUMBARD, Chief Judge, and MOORE and FEINBERG, Circuit Judges.
 MOORE, Circuit Judge:
 
 
 1
 Appellants, James Oliver Jones, Jr., Mat Jones, Hillel Samuel Liebert, Willie Lawrence McCray, Daniel Robert Moses, Peter Orris, and Eugene Rouse, Jr., are all affiliated with the Student Nonviolent Coordinating Committee, a civil rights organization. On June 23, 1965, at approximately 7:30 A.M., appellants, along with about 25 others, appeared at the steps and the front doors of the United States Court House at Foley Square in New York City. They carried placards and distributed leaflets which denounced the treatment of civil rights workers in Mississippi. Shortly after the demonstrators arrived, appellants, except Orris, wrapped chains around their bodies and then affixed the chains to heavy ornamental iron bars in front of windows on either side of the three front entrances to the Court House. The ends of the chains were secured with locks and Orris kept possession of the keys. Appellants, so chained, stood or sat in the three front entrances and by so doing caused various federal employees to enter the Court House through a side entrance on Pearl Street or through a subway entrance on the ground floor of the building, and caused other federal employees and certain people having business in the Court House to force their way past the chained appellants into the building. Appellants were arrested by United States Marshals at approximately 9:30 A.M. and taken into custody.
 
 
 2
 On July 7, 1965, an information was filed against appellants pursuant to the Assimilative Crimes Act, 18 U.S.C. §§ 7 & 13[1] charging that each of them acted "in such a manner as to annoy, disturb, interfere with, obstruct, and be offensive to others" with the intent to provoke a breach of the peace and under circumstances whereby a breach of the peace might be occasioned in violation of Section 722(2) of the New York Penal Law.[2] On July 25th appellants made a motion in the district court before Judge Harold R. Tyler, Jr., to dismiss the information on the ground, inter alia, that Section 722(2) was unconstitutionally vague on its face in that it could be construed to prohibit the exercise of First Amendment rights. The motion was denied on the ground that the section had been narrowly construed by the New York Court of Appeals and was inapplicable to peaceful demonstrations which caused minor inconvenience to passers-by. Thereafter, appellants were tried before Judge John F. X. McGohey without a jury and found guilty as charged. Each appellant received a suspended sentence and was placed on probation.
 
 
 3
 Two grounds for setting aside the convictions are asserted on appeal: (1) that Section 722(2) is unconstitutional in that it is overbroad and vague on its face and (2) that the evidence presented to the district court was insufficient to sustain a conviction for disorderly conduct.
 
 
 Constitutionality of Section 722(2)
 
 
 4
 In considering whether the conduct proscribed by Section 722(2) is adequately defined and whether the deterrent effect of the statute is within constitutional limits, we must examine the section as it has been construed by the New York Court of Appeals. See Shuttlesworth v. City of Birmingham, 382 U.S. 87, 90-92, 86 S.Ct. 211, 15 L.Ed. 2d 176 (1965); Winters v. People of State of New York, 333 U.S. 507, 514, 68 S.Ct. 655, 92 L.Ed. 840 (1948); cf. Dombrowski v. Pfister, 380 U.S. 479, 490-491, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965). Appellants contend that the New York Court of Appeals has failed to restrict the application of Section 722(2) to activities that are outside the protection of the First Amendment. We disagree and hold that the section as construed by that court is not unconstitutionally broad.[3]
 
 
 5
 In People v. Carcel, 3 N.Y.2d 327, 165 N.Y.S.2d 113, 144 N.E.2d 81, 65 A.L.R. 2d 1145 (1957), the New York Court of Appeals reversed a conviction under Section 722(2) and held that peaceful picketing coupled with the distribution of leaflets did not constitute disorderly conduct. The court stated unequivocally that "something more than a mere inconveniencing of pedestrians is required to support a conviction under subdivision 2 [of Section 722]." Id. at 332, 165 N.Y.S.2d at 116, 144 N.E.2d at 84. See also People v. De Cecca, 6 Misc.2d 213, 29 N.Y.S.2d 524 (1941). The court's determination to prevent Section 722(2) from infringing on the exercise of First Amendment rights is further illustrated by its decision in People v. Nixon, 248 N.Y. 182, 161 N.E. 463 (1928). There, although twenty defendants were parading on a New York City street four abreast on a sidewalk only twelve feet wide, the court held that the evidence was insufficient to warrant a conviction under Section 722(2). The court remarked that "no circumstances have been shown which would give the color of disorder and violence to conduct which is otherwise colorless." Id. at 187, 161 N.E. at 465. These decisions are sufficient to distinguish this case from Cox v. State of Louisiana, 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965), relied on by appellants, where the Supreme Court held that a state breach of the peace statute was unconstitutionally vague because as construed by the state courts it was "likely to allow conviction for innocent speech * * *" Id. at 552, 85 S.Ct. at 463. By direct contrast, there is no reason to believe that Section 722 (2) as construed by the highest court of New York State would "allow persons to be punished merely for peacefully expressing unpopular views." Id. at 551, 85 S.Ct. at 462.[4] Appellants have directed this court's attention to only one case, People v. Bellows, 281 N.Y. 67, 22 N.E. 2d 238 (1939), in which Section 722(2) was applied to conduct which could be considered constitutionally protected. However, that case in which the court sustained a conviction for disorderly conduct arising out of a peaceful picket encouraging a secondary boycott, was effectively overruled by People v. Carcel, supra, which held that peaceful picketing cannot be punished under Section 722(2). Cf. Thornhill v. State of Alabama, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1941). See also People v. Donegan, 19 Misc.2d 541, 191 N.Y.S.2d 701 (1959).
 
 
 6
 Finally, there is no question but that appellants were aware that their conduct was illegal and had fair notice that it was proscribed by Section 722 (2).[5] As the Supreme Court stated in Cox v. State of Louisiana, supra, "[a] group of demonstrators could not insist upon the right to cordon off * * * [an] entrance to a public or private building, and allow no one to pass who did not agree to listen to their exhortations." Id. 379 U.S. at 555, 85 S.Ct. at 464; cf. Brown v. State of Louisiana, 383 U.S. 131, 142, 86 S.Ct. 719, 15 L.Ed.2d 637 (1966); Shuttlesworth v. City of Birmingham, supra at 99, 86 S.Ct. 211 (1965) (Brennan, J., concurring). That, of course, is precisely what the appellants did here and in People v. Hipple, 263 N.Y. 242, 188 N.E. 725 (1934), the New York Court of Appeals held that such conduct, to wit, congregating in the doorway of a public building so as to interfere with and obstruct the passage to and from the building by passers-by constituted disorderly conduct within the meaning of Section 722(2). See People v. Penn, 16 N.Y.2d 581, 260 N.Y.S.2d 847, 208 N.E. 2d 789 (1965), cert. denied, 383 U.S. 969, 86 S.Ct. 1275, 16 L.Ed.2d 309 (1966) (prevention of lawful delivery of materials to construction site constituted disorderly conduct); People v. Gootzeit, 302 N.Y. 888, 100 N.E. 2d 177 (1951) (interference with orderly closing of public offices constituted disorderly conduct). See also People v. Galamison, 43 Misc.2d 72, 250 N.Y.S.2d 325 (2d Dept.1964); People v. Martin, 43 Misc.2d 355, 251 N.Y.S.2d 66 (2d Dept.1964), aff'd, 15 N.Y.2d 933, 259 N.Y.S.2d 152, 207 N.E.2d 197 (1965). Compare Henry v. City of Little Rock, 376 U.S. 776, 84 S.Ct. 1042, 12 L.Ed.2d 79 (1964) and Edwards v. South Carolina, 372 U.S. 229, 83 S.Ct. 680, 9 L.Ed. 2d 697 (1963) in which the Supreme Court reversed breach of the peace convictions for engaging in peaceful and orderly picketing in the vicinity of public buildings.
 
 
 Sufficiency of the evidence
 
 
 7
 The district court found that not less than nine men who were employed at, or had business in, the Court House gained entrance only after forcing their way past appellants and the chains they had erected. In addition, it found that "two of those who succeeded in entering were caused to fall and two others were pinned against the side of the center entrance. One of the latter had his wrist watch torn from his arm." An examination of the record, including pictures of the events that occurred, shows that these findings are supported by substantial evidence. It is clear beyond peradventure of doubt that appellants forcibly resisted the efforts of persons attempting to enter the Court House and that violence ensued which disrupted the public order. Such conduct was more than sufficient to constitute disorderly conduct within the meaning of Section 722 (2). See People v. Hipple, supra.
 
 
 8
 The judgment of the district court is affirmed.
 
 
 
 Notes:
 
 
 [1]
 18 U.S.C. § 13, entitled "Laws of states adopted for areas within federal jurisdiction," provides:
 "Whoever within or upon any of the places now existing or hereafter reserved or acquired as provided in section 7 of this title, is guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State, Territory, Possession, or District in which such place is situated, by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense and subject to a like punishment."
 18 U.S.C. § 7 provides that the territorial jurisdiction of the United States extends to all lands or places acquired for use by the United States which includes the U. S. Court House at Foley Square in New York City.
 
 
 [2]
 § 722(2) of the New York Penal Law provides in relevant part that:
 "Any person who with intent to provoke a breach of the peace, or whereby a breach of the peace may be occasioned, commits any of the following acts shall be deemed to have committed the offense of disorderly conduct: * * * 2. Acts in such a manner as to annoy, disturb, interfere with, obstruct, or be offensive to others: * * *."
 
 
 [3]
 Since we conclude that Section 722(2) as construed does not restrict freedom of expression, it is unnecessary to consider whether, if it did, appellants, whose conduct was not constitutionally protected, could attack the section on the ground that it was unconstitutional as applied to others coming within its terms. Cf. Dennis v. United States, 341 U.S. 494, 515-516, 71 S.Ct. 857, 95 L.Ed. 1137 (1951). See generally Sedler, Standing to Assert Constitutional Jus Tertii in the Supreme Court, 71 Yale L.J. 599, 612-20 (1962); Note, The Void-For-Vagueness Doctrine in the Supreme Court, 109 U.Pa.L.Rev. 67, 96-104 (1960); Note, 61 Harv.L.Rev. 1208 (1948)
 
 
 [4]
 The New York Court of Appeals has stated in construing the phrase "offensive language" contained in Section 720 of the New York Penal Law, which provides in part that "[a]ny person who shall by any offensive * * * language, annoy or interfere with any person in any [public] place * * * shall be deemed guilty of a misdemeanor," that it "must, to be a violation of section 720, amount to a nuisance." People v. Harvey, 307 N.Y. 588, 592, 123 N.E.2d 81, 83 (1954). This is a further indication that the court will not permit criminal prosecutions to be based on differences of opinion alone
 
 
 [5]
 "It is well established that a conviction under a criminal enactment which does not give adequate notice that the conduct charged is prohibited is violative of due process." Wright v. State of Georgia, 373 U.S. 284, 293, 83 S.Ct. 1240, 1246, 10 L.Ed.2d 349 (1963); see Note, 109 U.Pa.L.Rev. 67, supra note 3. Also, it should be noted that appellants concede that their conduct was not protected by the First Amendment and that "under a narrowly drawn specific statute, [it could] be found to be criminal."