**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Ronald WOODARD and Ranier Seelig,**
**Defendants-Appellants.**

**Nos. 15566, 15567.**

United States Court of Appeals
Seventh Circuit.

April 4, 1967.

138

Francis Heisler, Chicago, Ill., for appellants.

Edward V. Hanrahan, U. S. Atty., Robert A. Galbraith, Asst. U. S. Atty., Chicago, Ill., for appellee, John Peter Lulinski, Michael B. Nash, Asst. U. S. Attys., of counsel.

Before HASTINGS, Chief Judge, and SWYGERT, and CUMMINGS, Circuit Judges.

SWYGERT, Circuit Judge.

 Ronald Woodard and Ranier Seelig appeal from their convictions of disorderly conduct pursuant to the Assimilative Crimes Act, 18 U.S.C. §§ 7 and 13,[1]

---

1. 18 U.S.C. § 7 provides in part that the territorial jurisdiction of the United States includes lands "acquired for the use of the United States, and under the exclusive or concurrent jurisdiction thereof." 18 U.S.C. § 13 provides in part: "Whoever within or upon any of the places * * * reserved or acquired as provided in section 7 of this title, is guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed * * * within the jurisdiction of the State * * *

in which such place is situated, by the laws thereof in force at the time of such act * * * shall be guilty of a like offense and subject to a like punishment." The defendants contend that the information under which they were charged is defective because it does not allege that their conduct was "not made punishable by any enactment of Congress." Such an allegation is unnecessary. United States v. Wright, 28 Fed.Cas. p. 791, No. 16,774 (D.Mass.1871).

and the Illinois disorderly conduct statute, Ill.Rev.Stat. ch. 38, § 26–1(a) (1). The district court suspended the imposition of fines against both defendants and placed them on probation for a period of nine months. The defendants challenge the sufficiency of the evidence and the constitutionality of the disorderly conduct statute, and allege several trial errors.

The essential facts follow. On May 25, 1965, the House Committee on Un-American Activities (HUAC) held a hearing in the former United States Court of Appeals Building at 1212 Lake Shore Drive, Chicago. A full complement of deputy United States marshals was on hand to maintain order in and around the premises. Sometime around noon, the deputy marshals were in the process of clearing the hearing room for the luncheon recess. The defendant Woodard, who had left shortly before to visit the washroom, attempted to reenter the hearing room. The marshal-in-charge informed Woodard that he could not do so because the building was being cleared for the noon recess. Woodard announced his intention to return in spite of this instruction and stepped around the marshal-in-charge, only to be confronted by two deputy marshals. The deputy marshals repeated the direction of the marshal-in-charge and told Woodard that he would have to leave the building. At this point Woodard declared that if he were going to leave, the marshals would have to carry him, and fell limp on the floor. Disorder and confusion followed among people in the hallway and at a press conference being conducted nearby. Several deputy marshals carried Woodard from the building.

Later the same day, during the Committee's afternoon session, the defendant Seelig was seated as a spectator in the hearing room. During the course of the testimony of a witness at the hearing, Seelig jumped to his feet and began shouting, "Being an American citizen, I don't have to sit here and listen to these lies." A general commotion ensued. The chairman presiding at the hearing called for order by pounding his gavel and a marshal seated in front of Seelig warned him to keep quiet or he would have to leave. When Seelig continued his shouting, he was removed from the building by several deputy marshals.

■■■ The first question presented is whether the evidence is sufficient to convict the defendants of violations of that portion of the Illinois disorderly conduct statute under which they were charged, section 26–1(a) (1) of chapter 38 of the Illinois Revised Statutes. That section provides:

> A person commits disorderly conduct when he knowingly * * * does any act in such unreasonable manner as to alarm or disturb another and to provoke a breach of the peace.

The emphasis of the statute is upon the tendency of the conduct to disturb others and to provoke disruptions of public order and upon the unreasonableness of the activity when viewed in the context of the surrounding circumstances. We have no hesitation in saying that a jury could find the defendants' conduct violative of the statute.

■■ The defendant Seelig's action in jumping to his feet and shouting during a congressional hearing was shown to have disrupted the orderly procedure of the testimony before the Committee and to have caused a general commotion among the spectators. The evidence indicates that Seelig's disorderly behavior continued until he was forcibly removed from the hearing room. The unreasonableness of such conduct under the circumstances of a solemn public gathering, even under the most permissive standards, is apparent, and the jury could so find. Public hearings of every character, executive, legislative, and judicial, are most often "public" as to physical presence, but not as to participation. As such, they must be conducted with decorum. If each spectator were privileged to shout or even speak at will, pandemonium would likely result. When, as here, activity engaged in by a spectator prevents the orderly continuation of the

hearing, it falls within the prohibition of the statute. Cf., State v. Smith, 46 N.J. 510, 218 A.2d 147, cert. denied, 385 U.S. 838, 87 S.Ct. 85, 17 L.Ed.2d 71 (1966).

As to the defendant Woodard, the evidence shows that he, too, created a disturbance and caused confusion raising a threat to the public peace and tranquility in the building where the congressional hearing was being held. Woodard's action in falling limp on the floor was an intentional resistance to the authority of those designated to maintain order on the premises. The jury could find that such disruptive behavior was so unreasonable, given the attending circumstances, as to constitute disorderly conduct within the meaning of the statute. Cf., United States v. Jones, 365 F.2d 675 (2d Cir. 1966); State v. Smith, supra.

■■■ The defendants contend that any violation of the statute which may have occurred resulted solely from the "uncalled for" intervention of the deputy marshals, for which the defendants should not be held accountable. We think the evidence already recited refutes this argument. The conduct of the defendants, not that of the law enforcement agents, occasioned the public disturbances which prompted the prosecution of this case.[2]

The defendants next raise constitutional challenges to the Illinois disorderly conduct statute. First, they maintain that the statute is unconstitutionally vague. They focus their argument upon the language of the statute prohibiting any act done in "such unreasonable manner as to alarm or disturb another." They complain that the term "unreasonable" is undefined and that the statute fails to delineate the extent of the alarm or the gravity of the disturbance required. The defendants' argument thus reduces itself to the assertion that the statute is so vague as to deny them due process by failing to give them fair notice that their conduct was prohibited.[3]

■■■ The Constitution does not require impossible standards of specificity in penal statutes. It requires only that the statute convey "sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices." United States v. Petrillo, 332 U.S. 1, 8, 67 S.Ct. 1538, 1542, 91 L.Ed. 1877 (1947). When measured by this criterion, section 26–1(a) (1) of the Illinois disorderly conduct statute does not offend due process.[4]

2. It should be noted that the jury was instructed that in order to find the defendants guilty, the disturbances, if any, resulting from their conduct must have affected persons other than "those persons present to prevent such conduct."

3. "[C]riminal statutes which fail to give due notice that an act has been made criminal before it is done are unconstitutional deprivations of due process of law." Jordan v. De George, 341 U.S. 223, 230, 71 S.Ct. 703, 707, 95 L.Ed. 886 (1951).

4. No authoritative interpretation of section 26–1(a) (1) by the Illinois courts has been cited to us by the parties, nor has our research disclosed any. The legislative "Committee Comments," however, afford some assistance in construction. In part, they read:

Section 26—1(a) is a general provision intended to encompass all of the usual types of "disorderly conduct" and "disturbing the peace". Activity of this sort is so varied and contingent upon surrounding circumstances as to almost defy definition. Some of the general classes of conduct which have traditionally been regarded as disorderly are here listed as examples: the creation or maintenance of loud and raucous noises of all sorts; unseemly, boisterous, or foolish behavior induced by drunkenness; threatening damage to property or indirectly threatening bodily harm (which may not amount to assault); carelessly or recklessly displaying firearms or other dangerous instruments; preparation for engaging in violence or fighting; and fighting of all sorts. In addition, the task of defining disorderly conduct is further complicated by the fact that the type of conduct alone is not determinative, but rather culpability is equally dependent upon the surrounding circumstances. Thus, the discharge of a pistol on the desert by a lone marksman is harmless, whereas the discharge of the same pistol in a library or church is blameworthy. Similarly,

■ The statute proscribes conduct that is so unreasonable as to "alarm or disturb" another and provoke a "breach of the peace." The term "breach of the peace" has never had a precise meaning in relation to specific conduct. Yet from its early common law origin to the present it has received a fairly well defined gloss. "The offense known as breach of the peace embraces a great variety of conduct destroying or menacing public order and tranquility. It includes not only violent acts but acts and words likely to produce violence in others." Cantwell v. State of Connecticut, 310 U.S. 296, 308, 60 S.Ct. 900, 84 L.Ed. 1213 (1940). The term connotes conduct that creates consternation and alarm. It is an indecorum that incites public turbulence; yet violent conduct is not a necessary element. The proscribed conduct must be voluntary, unnecessary, and contrary to ordinary human conduct. On the other hand, the commonly held understanding of a breach of the peace has always exempted eccentric or unconventional conduct, no matter how irritable to others. It seems unnecessary to add that whether a given act provokes a breach of the peace depends upon the accompanying circumstances, that is, it is essential that the setting be considered in deciding whether the act offends the mores of the community.

■ The words "alarm or disturb" are perhaps superfluous because they are conjugate with the term "breach of the peace," which may encompass the reaction of disturbance and alarm on the part of others. If anything, the words qualify the broader meaning of "breach of the peace." The term "unreasonable manner" must be read contextually; it merely articulates the standard of judgment which would be applicable even in its absence. "Common sense * * * dictate[s] that * * * conduct is to be adjudged to be disorderly, not merely because it offends some supersensitive or hypercritical individual, but because it is, by its nature, of a sort that is a substantial interference with (our old friend) the reasonable man." People v. Harvey, 307 N.Y. 588, 123 N.E.2d 81, 83 (1954). In short, we think the Illinois statute, "when measured by common understanding and practices," United States v. Petrillo, supra, provided the defendants with adequate warning that their conduct was prohibited.

The Supreme Court of New Jersey was recently faced with a void-for-vagueness attack on the state's Disorderly Persons Act in State v. Smith, 46 N.J. 510, 218 A.2d 147, cert. denied, 385 U.S. 838, 87 S.Ct. 85 (1966), a case involving a disturbance by a spectator at a public meeting in the council chambers of the governing body of the city of Trenton. The New Jersey statute[5] defined a "disor-

---

shouting, waiving and drinking beer may be permissible at the ball park, but not at a funeral.

These considerations have led the Committee to abandon any attempt to enumerate "types" of disorderly conduct. Instead, another approach has been taken. As defined by the Code, the gist of the offense is not so much that certain overt type of behavior was accomplished, as it is that the offender knowingly engaged in some activity in an unreasonable manner which he knew or should have known would tend to disturb, alarm or provoke others. The emphasis is on the unreasonableness of his conduct and its tendency to disturb. The Committee felt that this definition places the offense on its proper foundation, namely, an invasion of the right of others not to be molested or harassed, either mentally or physically, without justification.

The question of justification poses another problem which is met in the article by the use of the phrase "in an unreasonable manner". This is simply a recognition that culpability depends in part on the surrounding circumstances. Thus, running through a hallway shouting "fire!" may amount to conduct which tends to alarm others, but if a fire in fact exists, such conduct may be justified, i. e. it may not be unreasonable. What is reasonable must always depend upon the particular case and therefore must be left to determination on the facts and circumstances of each situation as it arises.

5. N.J.Stat.Ann. § 2A:170–28.

▮▮▮▮▮▮▮▮▮▮▮

derly person" as "any person who by noisy or disorderly conduct disturbs or interferes with the quiet or good order of any place of assembly, public or private, including schools, churches, libraries and reading rooms". The court there made the following pertinent observation:

> [The] defendant says the statute is void for vagueness because it does not spell out the degree of noise or the details of a disorder which will offend. Of course, the statute does not do so in specific terms, and it may be doubted that the ingenuity of man could meet that demand if the Constitution made it. But the Constitution does not insist upon the impossible. It asks only what the subject will reasonably permit, and hence if there is a public interest in need of protection, due process does not stand in the way merely because the subject defies minute prescription. 218 A.2d at 151.[6]

▮▮▮▮▮▮ Turning to the defendants' remaining constitutional attack, the defendants contend that the Illinois statute is unconstitutionally broad as applied to their conduct because they were engaged in activities protected by the first amendment. We do not think that the conduct of either defendant was constitutionally protected. First amendment rights are "not absolute at all times and under all circumstances." Chaplinsky v. State of New Hampshire, 315 U.S. 568, 571, 62 S.Ct. 766, 769, 86 L.Ed. 1031 (1942). Conceding that the defendant Seelig was attempting to voice a protest against the HUAC proceedings, Seelig had no constitutional right to voice his protest in the manner he adopted. The first amendment does not guarantee the right of a spectator to shout during a legislative hearing so as to disrupt the orderly processes of the proceeding. Also conceding that the defendant Woodard may have

considered himself justified in attempting to regain admittance to the hearing room, it cannot be said that Woodard's action in resisting the lawful orders of the deputy marshals by falling on the floor so as to cause a disturbance is entitled to the protection of the first amendment.

The Supreme Court made it clear in two recent cases that those wishing to protest against governmental action or propagandize their views do not have a constitutional right to do so whenever and wherever they please. Adderley v. State of Florida, 385 U.S. 39, 87 S.Ct. 242, 17 L.Ed.2d 149 (U.S. Nov. 14, 1966); Cox v. State of Louisiana, 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965). In *Cox*, Mr. Justice Goldberg wrote:

> The rights of free speech and assembly, while fundamental in our democratic society, still do not mean that everyone with opinions or beliefs to express may address a group at any public place and at any time. The constitutional guarantee of liberty implies the existence of an organized society maintaining public order, without which liberty itself would be lost in the excesses of anarchy. The control of travel on the streets is a clear example of governmental responsibility to insure this necessary order. A restriction in that relation, designed to promote the public convenience in the interest of all, and not susceptible to abuses of discriminatory application, cannot be disregarded by the attempted exercise of some civil right which, in other circumstances, would be entitled to protection. One would not be justified in ignoring the familiar red light because this was thought to be a means of social protest. Nor could one, contrary to traffic regulations, insist up-

---

6. The court later added: "Surely, a man of ordinary intelligence knows the council chamber at the time of a public hearing is a public 'place of assembly.' So, too, such a man knows the 'quiet or good order' of a place depends upon the nature and the purpose and the needs of the meeting. He also knows a legislative chamber from a barroom or a ball park and knows what kind of behavior comports with each." State v. Smith, 46 N.J. 510, 218 A.2d 147, 152, cert. denied, 385 U.S. 838, 87 S.Ct. 85 (1966).

on a street meeting in the middle of Times Square at the rush hour as a form of freedom of speech or assembly. Governmental authorities have the duty and responsibility to keep their streets open ánd available for movement. A group of demonstrators could not insist upón the right to cordon off a street, or entrance to a public or private building, and allow no one to pass who did not agree to listen to their exhortations. Id. at 554–555, 85 S.Ct. at 464.

 The defendants, citing decisions such as Brown v. State of Louisiana, 383 U.S. 131, 86 S.Ct. 719, 15 L.Ed. 2d 637 (1966); Cox v. State of Louisiana, supra; Edwards v. South Carolina, 372 U.S. 229, 83 S.Ct. 680, 9 L.Ed.2d 697 (1963); Garner v. State of Louisiana, 368 U.S. 157, 82 S.Ct. 248, 7 L.Ed.2d 207 (1961); and Terminiello v. City of Chicago, 337 U.S. 1, 69 S.Ct. 894, 93 L.Ed. 1131 (1949), point to the threat to first amendment freedoms occasioned by the discriminatory application of broadly worded statutes designed to maintain public order. In the cases cited, statutes and ordinances were struck down insofar as the facts disclosed that the laws had been applied or construed to allow conviction for the exercise of first amendment rights. The situation here is entirely different. The defendants' conduct was not constitutionally protected and the statute was properly and narrowly applied. It cannot be contended that the Illinois statute is constitutionally infirm for the reason that it may possibly be misapplied to include protected activity. We have no warrant to assume that the Illinois courts will construe the statute improperly or that they will not interpret the statute as we have done. The state courts are as firmly bound by the Constitution as the federal courts.

Only a few of the trial errors alleged by the defendants need be mentioned. The remaining allegations of error have been considered; they are rejected without discussion.

 Prior to the trial, the defendants presented a motion under Rule 17 (b) of the Federal Rules of Criminal Procedure requesting the court to subpoena the members of the Committee who were present at the hearing.[7] They contended that the Committee members would give testimony showing that the defendants' conduct at the hearing was provoked. The motion was denied. The defendants argue that the denial of the motion deprived them of due process. The contention must be rejected. The issuance of subpoenas under Rule 17(b) is a matter within the trial court's discretion. United States v. Zuideveld, 316 F.2d 873, 881 (7th Cir. 1963), cert. denied, 376 U.S. 916, 84 S.Ct. 671, 11 L.Ed.2d 612 (1964). No abuse of that discretion has been demonstrated.

 During the defendant Seelig's testimony, Seelig stated that after he was removed from the hearing room he was choked and beaten unconscious by several law enforcement agents. The Government prosecutor expressed surprise at this testimony and requested a continuance. The jury was excused. The court asked the prosecutor whether he was considering "other prosecutive action with relation to the witness" and whether he wished the witness to be reminded of the consequences of perjury. The prosecutor replied that he merely wanted additional time to investigate the matter and that he did not think it was necessary to remind Seelig of his oath as a witness. After further discussion, a continuance was granted, following which the Government introduced rebut-

---

7. The motion was presented in the defendant Woodard's name only, although its contents and the arguments made to support it would presumably bear greater relevance to the defense attempted to be established at the trial by the defendant Seelig. The briefs filed by the defendants and the Government on appeal proceed on the basis that the motion was presented in behalf of both defendánts, and we have considered the arguments on that basis.

tal testimony.[8] The defendants both claim that they were denied due process because the preceding comments by the trial judge "intimidated" them. They also allege that they were prejudiced by the granting of a continuance. These claims are without merit. It is not clear how the comments, made in the absence of the jury, could have denied the defendants due process; the record contains no indication that either defendant was affected by them in any manner whatsoever. The granting of a continuance was both within the court's discretion and proper under the circumstances.

The judgments are affirmed.

CUMMINGS, Circuit Judge (concurring).

In joining the opinion of the Court, I wish to add a few comments with respect to the arguments that the relatively new Illinois disorderly conduct statute (Ill. Rev.Stat.1965, Ch. 38, § 26–1(a) (1)) is too vague to satisfy the Fourteenth Amendment and also unduly contravenes freedom of speech.

It is of course a court's duty to strive for a construction of a statute that will support its constitutionality. Screws v. United States, 325 U.S. 91, 98, 100, 65 S.Ct. 1031, 89 L.Ed. 1495; United States v. National Dairy Corp., 372 U.S. 29, 32, 83 S.Ct. 594, 9 L.Ed.2d 561, Amsterdam, "The Void-for-Vagueness Doctrine in the Supreme Court", 109 U. of Pa.L.Rev. 67, 86 (1960). If this were not a criminal case brought in the federal courts under the Assimilative Crimes Act (18 U.S.C. §§ 7 and 13), abstention might cause us to await authoritative construction of this statute by the Illinois courts. See Musser v. State of Utah, 333 U.S. 95, 68 S.Ct. 397, 92 L.Ed. 562.[1] But this being a criminal case, without any available procedure for Illinois judicial construction of the statute before closing the case

here, it now becomes necessary to construe the statute as the Illinois courts would. Cf. Hulburt Oil & Grease Co. v. Hulburt Oil & Grease Co., 371 F.2d 251, 254–255, 256 (7th Cir. 1966). It is to be presumed they would construe it to avoid doubtful constitutional questions. Fox v. State of Washington, 236 U.S. 273, 277, 35 S.Ct. 383, 384, 59 L.Ed. 573. As Mr. Justice Holmes there pointed out, "we see no reason to believe that the statute will be stretched beyond [the line drawn by the law]". He added the following relevant comment:

> "If the statute should be construed as going no farther than it is necessary to go in order to bring the defendant within it, there is no trouble with it for want of definiteness." (236 U.S. at p. 277, 35 S.Ct. at p. 384.)

The legislative history of a statute may cast sufficient light to dispel arguments of vagueness. United States v. National Dairy Corp., 372 U.S. 29, 32, 83 S.Ct. 594; United States v. Harriss, 347 U.S. 612, 620, 74 S.Ct. 808, 98 L.Ed. 989; Amsterdam, op. cit., pp. 73–74, 84. Here the Illinois Legislative Committee's Comments revised by Professor Charles H. Bowman (set forth in part in Note 4 of the opinion of the Court) supply the gloss and delineate the scope of Section 26–1(a) (1) of which he was the draftsman. In enacting the new disorderly conduct statute as part of the 1961 Illinois Criminal Code, the offense was intentionally made "considerably narrower" than its predecessor (Smith-Hurd Ann.Stat. c. 38 p. 391). Furthermore, the Court is warranted in drawing on the common law meaning of "breach of the peace" as used in this statute. Jordan v. De George, 341 U.S. 223, 71 S.Ct. 703; Comments on Disorderly Conduct Section of American Law Institute's Model Penal Code (Tentative Draft No. 13 (1961)) p. 4. The maximum penalty that may be

---

8. Seelig's testimony was given on a Friday afternoon. The trial was continued until the following Monday morning.

1. Abstention is usually confined to equitable cases. See Note, "Federal-Question Abstention: Justice Frankfurter's Doctrine in an Activist Era", 80 Harv.L.Rev. 604, 606, note 16 (1967). The use of the abstention doctrine in vagueness cases has been criticized. Idem, pp. 611–613; see also Dombrowski v. Pfister, 380 U.S. 479, 491–492, 85 S.Ct. 1116, 14 L.Ed.2d 22.

imposed for a violation is a $500 fine. The absence of a severe sanction is relevant in weighing unconstitutional uncertainty and the likelihood that First Amendment rights will be chilled. Amsterdam, *op. cit.*, p. 94.

As Professor Paul Freund has pointed out, even an over-broad statute can be saved by construction relatively simple and natural. As a reference, he mentions Supreme Court consideration of a statute involving a regulation of civil liberties in terms of its narrowed construction by an appellate court in the very case. Freund, "The Supreme Court and Civil Liberties", 4 Vanderbilt L.Rev. 533, 540, 541 (1951). The present construction of the Illinois disorderly conduct statute is to be contrasted with the fatally broad construction accorded by the Louisiana Supreme Court to that State's breach of peace statute in Cox v. State of Louisiana, 379 U.S. 536, 551–552, 85 S.Ct. 453. I believe the confining construction adopted by the opinion of the Court is justified and therefore agree that defendants' due process arguments must fall.[2] Because of the "hard core" nature of these violations, it is clear that defendants had notice that their activities were within the ambit of the Illinois statute and therefore cannot successfully assail its purported vagueness. Dombrowski v. Pfister, 380 U.S. 479, 491–492, 85 S.Ct. 1116; United States v. Jones, 365 F.2d 675, 678 (2d Cir. 1966). The limiting statutory construction contained in the opinion of the Court can properly be applied to defendants' prior conduct, for that conduct would obviously be prohibited under any construction. Shuttlesworth v. City of Birmingham, 382 U.S. 87, 99, 86 S.Ct. 211, 15 L.Ed.2d 176 (concurring opinion of Mr. Justice Brennan).

The maintenance of order is vital to freedom in our society, and as the Legislative Committee's Comments show, the subject matter being regulated here makes unfeasible any modes of administration other than those which invoke *ad hoc* judgments. Clearer methods of achieving the ends sought by this statute would not be feasible, for, as the draftsman recognized, disorderly conduct activity defies precise statutory definition.[3] Given such a setting, judicial tolerance for the *ad hoc* judgment scheme is justified. Boyce Motor Lines v. United States, 342 U.S. 337, 340, 72 S.Ct. 329, 96 L.Ed. 367. It would be manifestly unfair to invalidate a new statute, expertly drawn to cope with elusive subject matter, if the statute can be saved by judicious construction. See Mr. Justice Frankfurter's celebrated dissent in Winters v. People of State of New York, 333 U.S. 507, 535, 68 S.Ct. 665, 92 L.Ed. 840.

In considering the New Jersey disorderly conduct statute, that State's Supreme Court recognized that "the subject is such that greater specificity is not feasible", thus requiring the courts to see to it that the statute is "not applied beyond a fair understanding of the legislative intent". State v. Smith, 46 N.J. 510, 218 A.2d 147, 152 (1966), certiorari denied, 385 U.S. 838, 87 S.Ct. 85. Here a man of ordinary intelligence would certainly know what kind of behavior comports with an orderly legislative hearing. This standard suffices to justify the application of the Illinois statute to the facts of this case. Connally v. General Construction Co., 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322.

Most of the First Amendment cases relied upon by defendants involved peaceful protests against discrimination because of race and occurred in public places or places of public service. Similarly, People v. Turner, 17 N.Y.2d 829, 271 N.Y. S.2d 274, 218 N.E.2d 316 (1966), certi-

---

2. Defendants attack the use of the term "unreasonable" in the Illinois statute. However, the use of that term in criminal statutes was approved in United States v. National Dairy Corp., 372 U.S. 29, 83 S.Ct. 594; United States v. Ragen, 314 U.S. 513, 523, 524, 62 S.Ct. 374, 86 L. Ed. 383, and Levy Leasing Co. v. Siegel,

258 U.S. 242, 249–250, 42 S.Ct. 289, 66 L.Ed. 595.

3. See Note 4 of the opinion of the Court; see also Comments on Disorderly Conduct Section of American Law Institute's Model Penal Code (Tentative Draft No. 13 (1961)) pp. 6–7.

orari dismissed 386 U.S. 773, 87 S.Ct. 1417, 18 L.Ed.2d 522 and Carmichael v. Allen, 267 F.Supp. 985 (N.D.Ga.1966), involved protests in public streets, and in Cantwell v. State of Connecticut, 310 U.S. 296, 60 S.Ct. 900, the phonograph playing in the street was a religious exercise. None of these cases resembles the situation before us where defendants were engaged in disturbing a legislative hearing. As noted in State v. Smith, 46 N.J. 510, 218 A.2d 147 (1966), certiorari denied, 385 U.S. 838, 87 S.Ct. 85:

> "Whether the forum be the courtroom or the chamber of the legislature itself or of a political subdivision of the State, there must be order. It is frivolous to suggest the First Amendment stands in the way of that imperative." (218 A.2d at p. 150.)

Defendants have not demonstrated that the existence of this statute would have an inhibiting effect on the exercise of First Amendment rights. No showing has been made that persons would be chary about exercising those rights because of the existence of this statute. In truth, there have been many marches and demonstrations permitted in Illinois subsequent to this enactment. Therefore, there is no need to nullify this statute in order to protect freedom of speech.