THE CITY OF CHICAGO, Plaintiff-Appellee, *v.* JOHN T. OTTEN, Defendant-Appellant.

(No. 54774; )

First District—May 5, 1971.

Freeman & Molenaar, of Lansing, for appellant.

Richard L. Curry, Corporation Counsel, of Chicago, (Marvin E. Aspen and Gayle F. Haglund, Assistant Corporation Counsel, of counsel,) for appellee.

Mr. JUSTICE DIERINGER delivered the opinion of the court:

The defendant, John Otten, a 19-year old student from Holland, Michigan, was arrested at the scene of a riot on Madison Street, between LaSalle and Clark, in the City of Chicago, on October 11, 1969. He was charged with disorderly conduct and tried by bench trial in the Municipal Division of the Circuit Court of Cook County, convicted and fined $150. He brings this appeal, contending (1) there was not a preponderance of the evidence to find the defendant guilty of disorderly conduct; (2) the ordinance under which the defendant was convicted was void for vagueness; and (3) the complaint against the defendant was not specific enough to be legally sufficient.

The defendant testified that he came to Chicago on October 10, 1969, because he "had heard from a friend that the S.D.S. was going to be there * * * and also * * * to visit [his] girl friend who lives in Chicago." He stayed at the girl friend's house overnight and the next morning proceeded to Haymarket Square with a friend to take pictures of the demonstration which was gathering there. He testified that he and his friend were taking pictures at different angles all along the route to the intersection of LaSalle and Madison, and at that point the march broke up and the demonstrators began to run. He further testified he was caught in the group and ran east on Madison to escape from the crowd and was arrested while so doing. However, he also testified that he ran "mainly to get out of the middle of the march where I was."

The police testimony differed from that of the defendant. Detective Monahan of the Intelligence Division of the Chicago Police Department, wearing sport clothes, was marching along with the demonstrators and first noticed the defendant between LaSalle and Clark, when the demonstrators broke up and ran east on Madison, shouting. He testified the defendant came with the first wave going east on Madison, and he grabbed the defendant. They were forced back to a CTA bus standing at the curb, and the defendant broke loose and continued with the other demonstrators east on Madison. Detective Monahan stated the defendant had no camera. Officer Quinlan, who was a little farther east on Madison, testified he saw the defendant running with the mob east on Madison, with the group that was yelling and screaming, "kill the pigs, get the pigs," although he did not see the defendant strike anybody. He was part of the group or mob of five or six hundred people. "Some were running almost in circles, breaking windows, slugging policemen. They were all milling in a group and running different directions. Actually most of them were trying to get away from the policemen, get away or hit them." Officer Quinlan arrested the defendant and charged him with disorderly conduct.

At the trial defendant was the only witness on his behalf. His girl friend did not appear, and neither did the friend he said was with him with the camera.

The complaint is based on Section 193—1 (a) of the Municipal Code of Chicago. The pertinent section of the ordinance provides:

"A person commits disorderly conduct when he knowingly:

(a) Does any act in such unreasonable manner as to provoke, make or aid in making a breach of peace * * *."

The defendant claims this ordinance is void for vagueness. The ordinance closely resembles the Illinois disorderly conduct statute, which provides:

"A person commits disorderly conduct when he knowingly:
(1) Does any act in such unreasonable manner as to alarm
or disturb another and to provoke a breach of the
peace * * *." (Ill. Rev. Stat., 1969, ch. 38, par. 26—1
(a) (1).)

The Illinois Supreme Court considered the constitutionality of the
Illinois disorderly conduct statute in *People v. Raby* (1968), 40 Ill.2d
392. Defendant Raby was convicted of disorderly conduct for completely
blocking traffic outside City Hall during a demonstration. The Illinois
Supreme Court rejected the defendant's contention that, on its face and
as applied, the Illinois disorderly conduct statute was vague and over-
broad. The court specifically held that the word "unreasonable" is not
impermissibly vague and neither is the term "breach of the peace" which
the court noted was a "well recognized common-law term * * *
[which] appears in * * * the constitution of the United States."
(pp. 395-6.) The court noted that the disorderly conduct statute did not
attempt to particularize myriad types of conduct that might fall within
its purview, and recognized the necessity of framing the provision in
general terms to avoid the "futility of an effort to anticipate and enumer-
ate all of the methods of disrupting public order that fertile minds might
devise." (p. 396.) The court concluded that the language of the statute
gave any "offender knowingly engaged in some activity in an unreason-
able manner which he knew or should have known would tend to dis-
turb, alarm or provoke others" constitutionally sufficient notice that his
conduct was proscribed. (p. 397.)

The Illinois statute was considered by the U.S. Court of Appeals for
the 7th Circuit when it dismissed the contention that the Illinois statute
was unconstitutionally vague and affirmed the conviction in *United States
v. Woodard* (1967), 376 F.2d 136. In that case the court held the Con-
stitution does not require impossible standards of specificity; in statutes,
rather it requires only that the statute convey "sufficiently definite warn-
ing as to the proscribed conduct when measured by common under-
standing and practices," and the Illinois disorderly conduct statute was
held to provide adequate warning or proscribed conduct and does not
offend due process.

The defendant in the instant case cites *Cox v. Louisiana* (1964), 379
U.S. 536, and *Edwards v. South Carolina* (1963), 372 U.S. 229, to sup-
port his contention that the Chicago disorderly conduct ordinance is
vague and overbroad. The Supreme Court reversed those cases because
the law as construed or applied by the state courts allowed conviction
for peaceful exercise of free speech rights. In neither of these cases did
the Supreme Court hold that the statutes or ordinances were so vague as

to provide inadequate notice to one engaged in non-speech and disruptive conduct, where such conduct was proscribed. In both of those cases the record disclosed the demonstrations were orderly, that songs were sung, hands clapped and speeches made, but no violence erupted. Those facts are a sharp distinction from the instant case. In *Cox v. Louisiana, supra,* the court said:

"The constitutional guarantee of liberty implies the existence of an organized society maintaining public order, without which liberty itself would be lost in the excesses of anarchy. The control of travel on the streets is a clear example of governmental responsibility to insure this necessary order."

The Illinois Supreme Court recently held the ordinance in question in the instant case to be constitutional as against the challenge of free speech. (*City of Chicago v. Morris* (1970), 47 Ill.2d 226.) In that case the defendant had persisted in loudly berating a police officer who was in the process of making an arrest. This disturbance caused an angry crowd to gather. After repeated requests by the officer to cease his behavior, the defendant was arrested for disorderly conduct and convicted. In affirming his conviction for disorderly conduct, the court said there was "some evidence that the defendant knowingly persisted in activity which may be considered unreasonable in light of the circumstances and which may have provoked or aided in making a breach of the peace." The court further said:

"Whether a violation has occurred is determined by the reasonableness of the conduct in relation to the surrounding circumstances."

■■ In the instant case the question of the constitutionality of the ordinance was not raised by this defendant at the trial nor on a motion for new trial. A non-jurisdictional constitutional question may not be raised here for the first time (*People v. Eubank* (1970), 46 Ill.2d 383, 394), nevertheless, we have reviewed the cases on the question and hold that the ordinance is constitutional.

■■ The defendant also argues the complaint was not specific enough to be legally sufficient. Again, to preserve an issue for appeal, that issue must be raised in the trial court, and the defendant here did not raise such an objection. In *City of Chicago v. Joyce* (1967), 38 Ill.2d 368, the defendant was convicted of violating Chicago's disorderly conduct ordinance and challenged both the sufficiency of the complaint and the constitutionality of the ordinance itself. The Illinois Supreme Court held (pp. 371-2):

"It does not appear that the objection was raised or passed upon

in the trial court, and there is thus no ruling to review. It is well settled that matters not raised or passed upon in the trial court cannot be presented for the first time in review."

In *City of Chicago v. Westphalen* (1968), 95 Ill.App.2d 331, the court said (p. 335):

"A complaint ambiguous or deficient in some respects but which otherwise states a cause of action is subject to objection properly and timely made. If no objection is made, the objection is deemed to have been waived."

The defendant, having made no objection prior to or during his trial or by motion thereafter, has waived these objections and cannot raise them for the first time on appeal; however, we have examined the complaint and find it to be squarely within the holding of *City of Chicago v. Joyce, supra,* where the court held that a complaint similar to the one here in question, charging a violation of the City of Chicago disorderly conduct ordinance, adequately advised the defendant of the nature of the offense she was charged with and was adequate to enable her to prepare a defense. We hold the defendant in the instant case was adequately advised of the nature of the offense he was charged with, so that he could prepare a defense.

■■ The defendant further complains that his conviction was so devoid of evidentiary support as to deny him due process of law. This is a quasi-criminal action and the quantum of proof is a preponderance of the evidence and does not require proof beyond a reasonable doubt. The record discloses the testimony of the two policemen to the effect there was an unruly mob screaming "kill the pigs, get the pigs," breaking windows and slugging policemen. Detective Monahan testified he had observed the defendant running with the first wave of shouting demonstrators that broke east on Madison Street, and the defendant himself said he was running "to get out of the middle of the march where I was." He also said he was at Haymarket Square when the march began and traveled along with it to the place on Madison Street where the riot broke out. He knew or should have known how sensitive the situation was and placed himself in a group that had great potential for violence. He was a part of the general confusion when the trouble began, and his presence in the rampaging mob lent aid to those bent on destruction by limiting the ability of the police to restore order. It was for the magistrate, as the trier of the fact and as the sole judge of the credibility of the witnesses, to determine wherein the truth lies. He heard the evidence and observed the witnesses and considered the total circumstances of the incident.

We find the City proved the defendant guilty of disorderly conduct by a clear preponderance of the evidence, and under the rules stated herein the court was correct in its judgment. Judgment affirmed.

Judgment affirmed.

ADESKO, P. J., and BURMAN, J., concur.