Paula Herzmark Executive Director Department of Local Affairs 1313 Sherman Street Denver, CO 80203
Dear Ms. Herzmark:
This opinion letter is in response to your letter of February 20, 1981, as amended by your letter of April 7, 1981, in which you requested an interpretation of the Special District Control Act of 1965, C.R.S. 1973, 32-1-201-209 (Supp. 1980), as amended, particularly section 32-1-209(4).
QUESTIONS PRESENTED AND CONCLUSIONS
Your request for an attorney general's opinion presents three questions:
a. Does an unexpected substantial increase in property tax revenues for use by a metropolitan recreation district create an "unreasonable departure" from the original service plan?
 My conclusion is "no." It is my opinion that an unexpected substantial increase in revenues available to a special district does not constitute an "unreasonable departure" within the meaning of section 32-1-209(4). However, spending those increased revenues in violation of the original service plan may constitute an "unreasonable departure," such that a modification of the original service plan would be necessary pursuant to section 32-1-209(3).
b. Does an unexpected increase in revenues to a special district warrant the board of the county commissioners to seek an injunction before any construction contracts are let?
 My conclusion is "no." The board of county commissioners may only seek to enjoin construction contracts which "unreasonably depart" from the original service plan (or from the approved modified service plan). Therefore it cannot seek to enjoin construction contracts let in accordance with the original service plan.
c. Do the county commissioners have the obligation to act upon proposed modifications to the original service plan without a formal request?
 My opinion is that, by submitting a modified service plan to the county commissioners for their approval, a special district has fulfilled the statutory requirements of petitioning the commissioners for a modification of the service plan. C.R.S. 1973, 32-1-209(3). Therefore, the county commissioners are obligated to act upon the proposed modifications promptly.
ANALYSIS
1. Your first question concerns the issue of whether an unexpected substantial increase in tax revenues for the use of a special district creates an "unreasonable departure" from the original service plan, within the meaning of C.R.S. 1973,32-1-209(4). In the specific situation submitted for my review, you stated that the Clear Creek Metropolitan Recreation District submitted and received approval in October 1979 of an initial service plan which called for first year (1981) expenditures of between $150,000 and $188,000. On this basis, the Clear Creek County Board of Commissioners certified and levied a 2.5 mill levy upon the 1980 assessed valuation of the county. Because of an unusual and unexpected increase in the assessed valuation (due to the opening of the Amax "Henderson Mine"), the 2.5 mill levy in fact generated approximately $304,000 for use by the metropolitan recreation district.[1]
It is my opinion that actual receipt of this unexpected amount of tax revenue, in and of itself, does not constitute an "unreasonable departure" from the original service plan within section 32-1-209(4) of the Special District Control Act of 1965, C.R.S. 1973, 32-1-201-209 (Supp. 1980). Section 32-1-209(4) provides:
 (4) Any unreasonable departure from the service plan as originally approved or, if the same has been modified, from the service plan as modified, may be enjoined at any time prior to the date on which construction contracts are let for construction of all or any part of the departure sought to be enjoined . . . upon motion of the board of county commissioners from which a resolution of approval is required by this article. . .
Under the terms of the Special District Control Act every special district which exceeds the boundaries of any existing city, city and county, or incorporated town must file a service plan with the board of county commissioners of any county which has territory included within the proposed district. Section32-1-204 sets forth the essential elements to be included in the proposed service plan:
 32-1-204. Filing of service plan. (1) . . . The service plan shall consist of a financial survey and a preliminary engineering or architectural survey showing how the proposed services are to be provided and financed. The service plan shall include a map of the proposed district boundaries and an estimate of the population and the valuation for assessment of the proposed district, and it shall describe the facilities to be constructed, the standards of such construction, an estimate of costs, including the cost of acquiring land, engineering services, legal services, proposed indebtedness, including proposed maximum interest rates and discounts, and other major expenses related to the formation and operation of the district. . .
(Emphasis added.)
The above statute makes clear that financial plans are essential elements of the proposed service plan. Thus the plan must include an estimate of the valuation for assessment of the proposed district, an estimate of the costs of the proposed services, including the cost of acquiring land, engineering services, and legal services, what the proposed indebtedness would entail, and "other major expenses related to the formation and operation of the district." It is obvious that these financial projections are important considerations of the county commissioners whose counties are affected in approving the initial service plan. For example, a board of county commissioners may disapprove the service plan if the board finds upon satisfactory evidence that:
 (e) The area to be included in the proposed district does not have, or will not have, the financial ability to discharge the proposed indebtedness on a reasonable basis;. . .
C.R.S. 1973, 32-1-205(1)(e).
After the initial service plan is approved by the county commissioners, material modifications of the plan are required "with regard to changes of a basic or essential nature." C.R.S. 1973, 32-1-209(3). Modifications shall not be required "for changes of a mechanical type necessary only for the execution of the original service plan." Id. These "material modifications" are approved in substantially the same manner as the original service plan, upon petition to the board of county commissioners in each county affected. Id.
The fact that these approval statutes require such extensive financial data in the original service plan leads me to the conclusion that any substantial change in that data is a change of a "basic or essential nature," requiring a modification to the original service plan pursuant to section 32-1-209(3). The Special District Control Act does not address and apparently does not contemplate a situation where substantially more
revenue is received than is needed to provide the desired services. However, such a circumstance obviously directly affects the mill levy the county commissioners would be willing to certify and levy. Therefore, receiving approximately twice as much money in tax revenues, due to an unexpected increase in the assessed valuation of Clear Creek County, should require the board of the metropolitan recreation district to petition the county commissioners for a modification of the original service plan.
However, such a receipt of excess revenue does not, in and of itself, constitute an "unreasonable departure" within the meaning of section 32-1-209(4). The term "unreasonable" implies the conscious exercise of judgment or choice. In my opinion, it does not pertain to a fortuitous increase in the assessed valuation of a county which was unknown at the time the original service plan was developed and approved.
This reasoning is supported by judicial construction. The Colorado Supreme Court has stated that the "standard of unreasonableness must be used contextually." People v.Fitzgerald, 194 Colo. 415, 573 P.2d 100 (1978). In that case the court cited with approval Webster's Third NewInternational Dictionary of the English Language
(Unabridged, 1961), which defines "unreasonable" as: "evincing indifference to . . . appropriate conduct: ill and regulated behavior . . . exceeding the bounds of reason or moderation. . ." The court further stated that unreasonableness "merely articulates the standard of judgment which would be applicable even in its absence," citing United States v. Woodard,376 F.2d 136 (7th Cir. 1967).
Thus the term "unreasonable" requires some sort of voluntary behavior that can be distinguished from "reasonable" behavior. It does not apply to a situation such as the one presented here, where the increased tax revenues are due to an unforeseeable error in the estimate by the district of Clear Creek County's 1980 assessed valuation. It is my conclusion that the term "unreasonable departure" implies some conscious action or omission by the metropolitan recreation district board, which action or omission it knew or should have known would depart from the information set forth in the original service plan.
Applying this reasoning, an "unreasonable departure" may be an action of the metropolitan recreation district board inspending the increased revenue in a manner which unreasonably departs from the original service plan. Thus, in order to spend its unexpected additional funds, it should seek a modification of the plan. Failure to do so would warrant the county commissioners of Clear Creek County to enjoin construction contracts let in violation of the original service plan. Section32-1-209(4).
Note that the authority of the board of county commissioners to approve or disapprove the modified service plan is set forth in section 32-1-207. Under that statute, the county commissioners may only entirely disapprove the modified service plan for one of the reasons set out in section 32-1-205.
2. Your second question is: Can the county commissioners seek to enjoin the letting of any construction contracts on the basis of the unexpected receipt of increased revenues by the metropolitan recreation district?
This question has been answered in part by the analysis above. Whereas the receipt of the increased tax revenues would not constitute an "unreasonable departure," spending the tax revenues in violation of the original service plan may. Therefore the county commissioners have the power to seek to enjoin the letting of any contracts which "unreasonably depart" from those construction contracts proposed to be let under the original service plan, or under the approved modified service plan. Note, again, that the authority of the county commissioners to seek an injunction against such construction contracts is limited to "all or any part of the (unreasonable) departure." Section 32-1-209(4). Thus the board shouldnot seek to enjoin the letting of any construction contract consistent with the original service plan.
3. Your third question is: Does the board of county commissioners have the obligation to act upon a modified service plan submitted for their approval in the absence of a formal request?
It is my opinion that by submitting proposed modifications to the original service plan to the county commissioners, as has been done in this case, the Clear Creek Metropolitan Recreation District has in fact "petitioned" the board of county commissioners for a modification, as required by section32-1-209(3). There is no requirement in that section for any formal petition to the county commissioners, and it is obvious that by submitting the proposed modifications, the district desires the county commissioners to act upon that proposal. Therefore any conclusion that this action by the district does not constitute a formal request would be exalting form over substance. It is my conclusion therefore that the county commissioners must act upon the proposed modifications, in accordance with the Special District Control Act, with all due speed.
SUMMARY
To summarize my opinion, I do not believe the unforeseeable and unexpected receipt of additional tax revenues by a metropolitan recreation district, in and of itself, constitutes an "unreasonable departure" from an original service plan which has formally been approved by a board of county commissioners. However, because of the substantial change in the financial picture of the service district, material modifications of the service plan must be required before the increased revenue can be spent in a manner which unreasonably departs from the original service plan. Finally, by submitting proposed modifications to the original service plan to the board of county commissioners, the metropolitan recreation district has fulfilled the statutory requirement of "petitioning" the board for modifications, and the board is required to act upon the proposed modifications with all due speed.
Very truly yours,
 J.D. MacFARLANE Attorney General
COUNTY GOVERNMENT TAXATION AND REVENUE SPECIAL DISTRICTS COUNTY COMMISSIONERS
C.R.S. 1973, 32-1-209(3) and (4)
LOCAL AFFAIRS, DEPT. OF Local Government, Div. of
Receipt of unexpected revenues by a metropolitan recreation district is not, in and of itself, an "unreasonable departure" of the original service plan within C.R.S. 1973, 32-1-209(4). However, a material modification may be required before the increased revenue can be spent. By submitting proposed modifications to the county commissioners, the district has fulfilled the statutory requirement of petitioning the board of county commissioners for material modifications to the original service plan. C.R.S. 1973, 32-1-209(3).
[1] The question has arisen as to whether the 7 percent limitation on property taxation found in C.R.S. 1973, 29-1-301
(Supp. 1980) would apply to restrict the metropolitan recreation district from collecting the unexpected revenues. It would not. Since this year (1981) is the first year property within the district has been taxed (on the 1980 assessed valuation) the 7 percent limitation cannot apply until next year. Prior to this year, there was no 100 percent to restrict to a 107 percent increase under the terms of section 29-1-301.