Commonwealth *v.* Saxon, Appellant.

Argued September 14, 1970. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*G. Vaughn,* with him *Donn I. Cohen,* and *Liverant, Senft and Cohen,* for appellant.

*Gary M. Gilbert,* Assistant District Attorney, with him *Harold N. Fitzkee, Jr.,* District Attorney, for Commonwealth, appellee.

OPINION BY CERCONE, J., March 23, 1971:

The Indictment against Thaddeus Saxon charged that he: ". . . did unlawfully and feloniously interfere

with law enforcement personnel and fire fighting equipment, during riotous and tumultuous conditions, to wit: did stand at the intersection of South Penn Street and West Hope Avenue, and refused to let fire fighting equipment proceed to a fire at Hoffman's Meat Market situate at 226 South Penn Street, City of York, Pennsylvania, and thereby endangered the lives of personnel and residents lawfully within the area."

This Indictment was based on Section 402.1 of The Penal Code, Act of June 24, 1939, P. L. 872, as amended by the Act of July 12, 1968, P. L.    , 18 P.S. 4402.1, which provides: "Section 402.1 Interferences with Law Enforcement or Fire Fighting Personnel or Equipment, Endangering Lives of such Personnel or Others During Riotous or Tumultuous Conditions. . . . Whoever during any riotous or tumultuous conditions does any act which interferes with the operation of law enforcement or fire fighting personnel or equipment, or endangers the lives of such personnel or any other person lawfully within the area, is guilty of a misdemeanor, and upon conviction thereof, shall be sentenced to undergo imprisonment, by separate or solitary confinement at labor, for a term of not more than two (2) years."

Defendant Saxon moved to quash the indictment on the ground that it was based on a Statute that was vague and overbroad and therefore unconstitutional. The motion was refused and the case proceeded to trial before a jury.

The Commonwealth presented evidence that on the night of August 4, 1968, at about 11 o'clock P.M., the York City police, faced with a riotous situation, had a certain area of York, including the 200 block of South Penn Street, sealed off. Shots were being fired and bonfires were being built in the street when the police took this precaution. A fire started in the rear of

Hoffman's Meat Market located at Penn Street and Hope Alley and fire apparatus was summoned.

As the fire truck approached, Saxon and one Wright were standing in the middle of Penn Street and the fire equipment was unable to continue to the fire because of their presence in the street. When they refused to move at the request of the police officer, they were removed from the street. As a result of the defendants' actions, the fire apparatus was delayed for a brief time from proceeding to the fire.

Saxon denied that he stood in Penn Street and caused the fire truck to stop.

The jury chose to believe the Commonwealth's witnesses and returned a verdict of guilty. Defendant Saxon then made motions for new trial and in arrest of judgment, which were refused by the court below.

Defendant now appeals to this Court contending that his conviction cannot stand because the Act upon which the indictment and conviction were based was unconstitutional. He claims:

1. That part of the statute which reads "any act which interferes" is unconstitutionally vague.

2. That part of the statute which reads "the operation of" is unconstitutionally vague.

3. The statute fails to require that the proscribed conduct be done *intentionally.*

4. The statute fails to require that the interference with the law-enforcement or fire-fighting personnel be interference with them *in the course of their performance of an authorized act within their official capacity as such.*

5. The statute fails to require knowledge on the part of the accused that those with whom they interfere are policemen or firemen.

6. The statute fails to require knowledge on the part of the accused that there is a riotous or tumultuous condition.

7. The statute is unconstitutionally overbroad.

The defendant also presents the argument that the Trial Judge's instructions to the jury did not limit the charges against him to a constitutional interpretation and application of the Act and thus he was judged under an overbroad and unconstitutional construction of the statute.

The first observation to be made is that the statute here involved was directed at the very serious matter of interference, during riotous or tumultuous conditions, with the operation of law-enforcement or fire-fighting personnel or equipment or the endangering the lives of such personnel or any other person lawfully within the area. The legislative history of the Act reveals the offense was deemed so serious by the legislature that the original draft made a violation of the statute a felony. An amendment reduced the offense to a misdemeanor. The conduct which is prohibited and covered by the statute is not constitutionally protected. Constitutional guarantees do not include the right to interfere with law-enforcement officers and fire-fighting personnel engaged in civil emergencies, including sudden calamity such as riots and the tumult that characterizes them.

When a statute directs its attention to such an act, the scope of a Court's inquiry into the statute's alleged vagueness is different than that in the case of a statute restricting privileges or conduct which on its face would be constitutionally protected by the First Amendment. This is indicated in the case of *United States v. National Dairy Corporation*, 372 U.S. 29, 83 S. Ct. 594 (1963), in which the Supreme Court said: "In this connection we also note that the approach to 'vagueness' governing a case like this is different from that followed in cases arising under the First Amendment. There we are concerned with the vagueness of the stat-

ute 'on its face' because such vagueness may in itself deter constitutionally protected and socially desirable conduct . . . No such factor is present here where the statute is directed only at conduct designed to destroy competition, activity which is neither constitutionally protected nor socially desirable. We are thus permitted to consider the warning provided by Section 3 not only in terms of the statute 'on its face' but also in the light of the conduct to which it is applied. The reliance of National Dairy and Wise on First Amendment cases is therefore misplaced."

In that *National Dairy* case, supra, the Court went on to evaluate the statute in the light of the conduct with which the defendant was charged and found that it was not vague as applied to such conduct: *"Void for vagueness simply means that criminal responsibility should not attach where one could not reasonably understand that his contemplated conduct is proscribed. United States v. Harriss,* 347 U.S. 612, 617 (1954). In determining the sufficiency of the notice, *a statute must of necessity be examined in the light of the conduct with which a defendant is charged.* Robinson v. U.S., 324 U.S. 282 (1945). In view of these principles, we must conclude that as §3 of the Robinson-Patman Act gave National Dairy and Wise sufficient warning that selling below cost for the purpose of destroying competition is unlawful, *the statute is constitutional as applied to them.* This is not to say that a bead-sight indictment can correct a blunderbuss statute, for the latter itself must be sufficiently focused to forewarn of both its reach and coverage. *We therefore consider the vagueness attack solely in relation to whether the statute sufficiently warned National Dairy and Wise that selling* 'below cost' with predatory intent was within its prohibition of 'unreasonably low prices'.

"In proscribing sales at 'unreasonably low prices for the purpose of destroying competition or eliminat-

ing a competitor', we believe that Congress condemned sales made below cost for such purpose. *And we believe that National Dairy and Wise could reasonably understand from the statutory language that the conduct described in the conduct was proscribed by the Act. . . .*" (Emphasis supplied)

In examining the statute in the instant case in the light of the conduct with which defendant was charged, we find no difficulty in holding that the statute clearly set out the act which it intended to prohibit, that being, interference with policemen and firemen in the performance of their duties during riotous or tumultuous conditions. To give it any other construction is an exercise in dissembling. The decision in *United States v. Petrillo*, 332 U.S. 1, 67 S. Ct. 1538 (1947), points up the principle applicable here: "We could not sustain this provision of the Act if we agreed with the contention that persons of ordinary intelligence would be unable to know when their compulsive actions would force a person against his will to hire employees he did not need (citing cases). But we do not agree . . . We think that the language Congress used provides an adequate warning as to what conduct falls under its ban, and marks boundaries sufficiently distinct for judges and juries fairly to administer the law in accordance with the will of Congress. That there may be marginal cases in which it is difficult to determine the side of the line on which a particular fact situation falls is no sufficient reason to hold the language too ambiguous to define a criminal offense . . . *The language here challenged conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices. The Constitution requires no more.*" (Emphasis supplied)

Another manner of stating this rule is set forth in *United States v. Harriss*, 347 U.S. 612, 74 S. Ct. 808

(1954) : "The constitutional requirement of definiteness is violated by a criminal statute that fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute. The underlying principle is that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed.

"On the other hand, if the general class of offenses to which the statute is directed is plainly within its terms, the statute will not be struck down as vague even though marginal cases could be put where doubts might arise (citing cases). *And if this general class of offenses can be made constitutionally definite by reasonable construction of the statute, this court is under a duty to give the statute that construction.* This was the course adopted in Screws v. United States, 325 U.S. 91, upholding the definiteness of the Civil Rights Act." (Emphasis supplied) In the instant case the indictment clearly and specifically charged the defendant with unlawfully interfering, during riotous and tumultuous conditions, with law-enforcement personnel and fire-fighting equipment, thus delaying or preventing the fire-fighting equipment from proceeding to a fire.

The importance of the indictment's specific charges was noted in *United States v. National Dairy Corporation,* supra, where the Supreme Court distinguished the case of *United States v. Cohen Grocery Co.,* 255 U.S. 81 (1921), on which the defendants there relied, by pointing out: "In Cohen the Act proscribed 'any unjust or unreasonable rate or charge'. The charge in the Indictment was in the exact language of the statute, and, in specifying the conduct covered by the charge, the Indictment did nothing more than state the price the defendant was alleged to have collected. Hence, the Court held that a 'specific or definite act' was neither proscribed by the Act nor alleged in the

indictment." In the instant case, not only was the Indictment more specific than the statute, but, in addition, the trial judge, in his instructions to the jury, also limited the charges against defendant to a constitutional construction of the Act as it related to his specific conduct. The judge instructed the jury that it could find defendant guilty only if an intentional interference with law-enforcement personnel and fire-fighting equipment during riotous and tumultuous conditions had been proved beyond a reasonable doubt. The judge further instructed that if the jury could not so find, it was to return a verdict of not guilty in favor of the defendant.

Defendant complains that the Trial Judge's instructions were not sufficient to limit the statute to a constitutional application in that he did not tell the jury it was required to find that (1) defendant had knowledge the vehicle interfered with was fire-fighting equipment; (2) defendant had knowledge that a riotous or tumultuous condition existed; or (3) the interference was with the personnel in their performance of an authorized act within their official capacity. We do not believe, however, that under the facts of this case the failure to specifically instruct as to these three matters, to which omission defendant took no exception, constituted fundamental error. Under the Commonwealth's evidence, which the jury chose to believe, no credible claim can be made by defendant that he had no knowledge that the vehicle alleged to have been interfered with was fire-fighting equipment, or that he did not know a riotous or tumultuous condition existed, or that the fire-fighting personnel were not at the time of the interference acting within their authorized official capacity as fire-fighting personnel, especially when defendant admitted in his testimony that he saw the fire at the meat market and smelled and saw the smoke.

We cannot see how, under the facts of this case, the judge's failure to charge on these matters could have affected the jury's determination.

We hold, therefore, that the Indictment and the judge's charge sufficiently narrowed the application of the statute to a constitutional construction and that such construction cures any vagueness or overbroadness as far as the charges against this particular defendant are concerned. In *Shuttlesworth v. City of Birmingham*, 382 U.S. 87, 86 S. Ct. 211 (1965), the Supreme Court of the United States made it very clear that it was its duty to accept a state court's limiting construction of an otherwise vague or broad statute, saying: "Literally read, therefore, the second part of this ordinance says that a person may stand on a public sidewalk in Birmingham only at the whim of any police officer of that city. The constitutional vice of so broad a provision needs no demonstration. It 'does not provide for government by clearly defined laws, but rather for government by the moment-to-moment opinions of a policeman on his beat.' Cox v. State of Louisiana, 379 U.S. 536, 559, 579, 85 S. Ct. 453, 466, 469, 476, 13 L. Ed. 2d 471, 487 (separate opinion of Mr. Justice BLACK). Instinct with its ever-present potential for arbitrarily suppressing First Amendment liberties, that kind of law bears the hallmark of a police state.

"The matter is not one which need be exhaustively pursued, however, because, as the respondent correctly points out, the Alabama Court of Appeals has not read §1142 literally, but has given to it an explicitly narrowed construction. The ordinance, that court has ruled, 'is directed at obstructing the free passage over, on or along a street or sidewalk by the manner in which a person accused stands, loiters or walks thereupon. Our decisions make it clear that the mere refusal to move on after a police officer's requesting that

a person standing or loitering should do so is not enough to support the offense. . . . [T]here must also be a showing of the accused's blocking free passage. . . .' Middlebrooks v. City of Birmingham, 42 Ala. App. 525, 527, 170 So. 2d 424, 426.

"The Alabama Court of Appeals has thus authoritatively ruled that §1142 applies only when a person who stands, loiters, or walks on a street or sidewalk so as to obstruct free passage refuses to obey a request by an officer to move on. It is our duty, of course, to accept this state judicial construction of the ordinance. Winters v. People of State of New York, 333 U.S. 507, 68 S. Ct. 665, 92 L. Ed. 840; United States v. Burnison, 339 U.S. 87, 70 S. Ct. 503, 94 L. Ed. 675; Aero Mayflower Transit Co. v. Board of Railroad Comm'rs, 332 U.S. 495, 68 S. Ct. 167, 92 L. Ed. 99. As so construed, we cannot say that the ordinance is unconstitutional though it requires no great feat of imagination to envisage situations in which such an ordinance might be unconstitutionally applied."

Defendant argues that innocent, unintentional or inadvertent acts, performed without knowledge that they constitute interference with law-enforcement personnel or fire-fighting equipment, can be held criminal under the statute, and that the statute can infringe upon a person's civil liberties or permit an act to be labeled as interference at the whim of the arresting officer's subjective determination. However, as construed by the lower court and as applied to the facts and circumstances of this case, no such unconstitutional application has resulted here, and therefore we need not determine nor be influenced by future application of the statute to the hypothetical cases posed by defendant. As stated in *Fox v. State of Washington*, 236 U.S. 273, 35 S. Ct. 383 (1915): "So far as statutes fairly may be construed in such a way as to avoid doubtful

constitutional questions they should be so construed (citing cases) ; and it is to be presumed that state laws will be construed in that way by the state courts. We understand the state court by implication, at least, to have read the statute as confined to encouraging an actual breach of law. Therefore, the argument that this act is both an unjustifiable restriction of liberty and too vague for a criminal law must fail. . . . That is all that has happened as yet, and we see no reason to believe that the statute will be stretched beyond that point.

"If the statute should be construed as going no farther than it is necessary to go in order to bring the defendant within it, there is no trouble with it for want of definiteness (citing cases)."

In *United States v. Petrillo,* supra, the Court observed: "We, therefore, have a situation in which we are urged to strike down a statute as violative of the constitutional guarantees of free speech when the statute has not been, and might never be, applied in such manner as to raise the question respondent asks us to decide."

The language of the court in *United States v. Jones,* 365 F. 2d 675 (2d Cir. 1966) is strikingly pertinent here. In that case the Court held that the statute as construed by the New York Court of Appeals was not unconstitutionally broad, saying: "By direct contrast, there is no reason to believe that section 722 (2) as construed by the highest court of New York State would 'allow persons to be punished merely for peacefully expressing unpopular views.' . . ."

And in *United States v. Randolph,* 161 F. Supp. 553 (D.C.E.D. Ill. 1958), affirmed, 261 F. 2d 234, cert. den., 359 U.S. 949, 79 S. Ct. 733: "A statute should not be construed to make it repugnant to constitutionality where there is an alternative interpretation which is

constitutional. . . . Also, this court need not consider the application of the statute to a person who innocently aids a prisoner to escape, . . . The relator was properly charged in the indictment with aiding a prisoner to attempt to escape and was found guilty after a jury trial. . . . Vraniak would indeed find it difficult to maintain that he innocently aided a prisoner to escape in view of the fact that he alleged in his petition that he participated in the escape plot. It must be concluded that §228 is neither vague, nor does it violate the due process clause in not requiring intent to be alleged in the indictment."

Where the facts of a particular case fall within the clear purpose of the prohibiting Act, its application will not violate constitutional safeguards merely because of a doubt as to its applicability in regard to other cases that may never arise: *Robinson v. United States,* 324 U.S. 282, 65 S. Ct. 666 (1945). In *United States v. Wurzbach,* 280 U.S. 396, 50 S. Ct. 167 (1930), the United States Supreme Court refused to hold as vague a statute which contained uncertainties as to persons embraced therein, it being clear that the fact situation then before the court was clearly embraced by the statute. The Court stated that as to any future difficulty in the application of the statute, "it will be time enough to consider it when raised by some one whom it concerns."

In summary, we conclude from our study of the case that the evidence presented the kind of occurrence to which Section 402.1 of The Penal Code was intended to apply; that the language of that Act was sufficiently definite to warn the defendant of the nature and character of conduct it proscribed; that the Indictment and the trial judge's instructions did limit the charges against defendant to a constitutional application of the statute; and that uncertainties as to future applica-

tions of the Act need not here concern or govern us in the determination of this case.

There being no violation of defendant's constitutional rights in the application of the statute to him, his motions for new trial and in arrest of judgment were properly refused by the court below. We affirm the judgment of sentence entered by the court below.

---

CONCURRING OPINION BY HOFFMAN, J.:

I agree with the conclusion of the majority that the application of the statute to appellant did not violate his constitutional rights. Although the language of the Act is unduly broad, I think that the majority has construed the statute to fit within constitutional parameters.

In the charge to the jury the lower court required that in order to convict appellant the jury must be convinced beyond a reasonable doubt that he had the criminal intent to hinder or interfere with or endanger the firefighting personnel. Such criminal intent is a necessary element of the statute. The act of "interference" may not be simply inadvertent. The Commonwealth clearly presented sufficient evidence to allow the jury to find criminal intent and substantial interference with fire equipment.

In defining the act which the statute intended to prohibit, the majority notes that the policemen and firemen must be "in the performance of their duties". I believe that this qualification is required in order that a defendant charged under the statute may not be convicted for failure to obey an illegal order from law enforcement personnel. Again, it was clearly established that the firefighters here were going about their duties, as they were only a few yards away from a burning store.

In summary, I read the majority opinion as requiring intentional and significant interference with law enforcement or firefighting personnel operating in the performance of their duties. Thus I join in that opinion.

SPAULDING, J., joins in this concurring opinion.